Line Lexington Lumber & Millwork Co., Inc., Appellant, *v.* Pennsylvania Publishing Corp.

Argued April 18, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Victor Wright,* with him *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Joseph Head* and *Stephen A. Cozen,* with them *Swartz, Campbell & Detweiler,* and *Orlofsky, Cozen and Begier,* for appellees.

OPINION BY MR. JUSTICE NIX, March 16, 1973:

This is an appeal from an order of the Court of Common Pleas of Philadelphia sustaining preliminary objections in the nature of a demurrer to the amended

complaint and dismissing the action against the appellees herein. Appellant contends that his amended complaint stated a cause of action for reformation of contract. We agree and reverse the order below.

Line Lexington and Millwork Company, Inc., appellant (hereinafter referred to as "Line"), filed a complaint in equity against Pennsylvania Publishing Corporation (hereinafter referred to as "Publishing") not a party to this appeal, Marsh & McLennan, Inc., appellee (hereinafter referred to as "Marsh"), and various insurance companies, appellees (hereinafter referred to as "Insurers"). Preliminary objections in the nature of a demurrer and also raising additional questions not pertinent to this appeal were filed. Appellant filed an amended complaint and, after the entry by the court below of an order dismissing the amended complaint, an appeal was taken to this court.[1]

Line, by way of a written lease dated April 5, 1971, leased an Industrial building which it owned to Publishing. *Inter alia,* the lease required Publishing to pay as additional rent, all fire insurance premiums on the demised premises and/or the building of which the demised premises was a part. By an oral agreement between Line and Publishing, the latter undertook to obtain fire insurance in the amount of $70,000.00 in order to protect fully Line's ownership interest in the building.[2]

Publishing contacted Marsh as broker and as agent for Insurers and secured fire insurance policies contain-

---

[1] As to Publishing, the court below transferred the case to the law side of the court. At the time the record was certified to this court, Line's action against Publishing was still pending.

[2] Prior to this oral agreement, Line had obtained a $50,000.00 fire insurance policy on the building with a carrier that is not involved in this action. The total value of the building is alleged to have been $120,000.00.

ing $70,000.00 coverage on the building.[3] In each of the several policies obtained, Publishing was listed as the insured party. A fire occurred on June 15, 1971, destroying the building in question, and the Insurers paid Publishing in return for a release of all of its claims under the policies.[4]

A review of the complaint forces the conclusion that it alleges facts justifying reformation of the insurance policies to name appellant as the insured party with respect to the building.[5] The pertinent paragraphs in the complaint are as follows:

"12. Pursuant to the said oral agreement defendant [Publishing] applied to defendant MARSH, an insurance broker and agent for each of the remaining defendants, for fire insurance on the said building in the amount of $70,000. . . . Plaintiff does not know whether the said applications were oral or in writing, the content thereof (other than the allegations set forth in Paragraph 13 hereof), nor precisely when they were made by defendant PUBLISHING to defendant MARSH. The facts relating thereto are in the exclusive knowledge of defendants PUBLISHING and MARSH. . . .

"13. . . . defendant PUBLISHING disclosed to defendant MARSH at the time of its application for said

---

[3] At the same time Publishing applied for $900,000.00 insurance on the contents of the building which contents belonged to Publishing. That coverage is not at issue in this appeal.

[4] From the Insurers' preliminary objections, it is apparent that the appellant notified the Insurers of its claim before they had made any settlement with Publishing. The Insurers chose to ignore this claim and to consummate the negotiations with Publishing rather than to use the vehicle of interpleader or declaratory judgment to ascertain their liability. See, Pa. R. C. P. 2301 et seq., and Act of June 18, 1923, P. L. 840, §1 et seq., 12 P.S. §831 et seq.

[5] Appellant also contends that the facts in his amended complaint would entitle him to relief at law on the theory that Publishing was appellant's agent. We need not reach that issue in view of our disposition of the matter.

insurance that it was lessee of said building, that plaintiff was the owner thereof, and that defendant PUBLISHING was applying for insurance on the said building on behalf of plaintiff pursuant to its obligation under the lease and its oral agreement to do so.

"19. Defendant MARSH, well knowing that plaintiff was the owner of the said building and that plaintiff was intended to be designated in the said policies as the insured party with respect thereto, caused each of the said policies of insurance to be issued to defendant PUBLISHING as the insured party as to both the building and the contents and failed to cause plaintiff to be designated in the several policies of insurance as the insured party with respect to said building."

Ordinarily, a mistake must be mutual to the parties to the contract in order to justify reformation of a written instrument on the basis of mistake. *Bugen v. New York Life Insurance Co.*, 408 Pa. 472, 475, 184 A. 2d 499, 500 (1962). Since the complaint suggests that Marsh intentionally caused Publishing to be named as the insured party, the lower court was correct in noting that this is not a case of mutual mistake.

Apart from the doctrine of mutual mistake, authorities have recognized that a mistake by one party, and knowledge of the mistake by the other, should justify relief as fully as a mutual mistake. Williston on Contracts, 3rd Ed. §1577; Restatement of Contracts §505; Corbin on Contracts, 1960 Ed. §610. In effect, the party with knowledge of the mistake is estopped from relying on the mistake.

Our courts have indicated approval of that doctrine as early as *Cook v. Liston*, 192 Pa. 19, 43 A. 389 (1899).[6] See also, *Peoples Natural Gas Co. Appeal*, 399 Pa. 226, 160 A. 2d 391 (1960). In *Kaufman v. New York Life*

---

[6] The court's per curiam opinion approves of the lower court's recognition of this doctrine.

*Insurance Co.*, 315 Pa. 34, 172 A. 306 (1934), we stated that if the party against whom reformation is sought has such knowledge of a mistake as to justify an inference of fraud or bad faith, relief would be justified.[7] In *Overholt v. Reliance Insurance Co.*, 319 Pa. 340, 179 A. 554 (1935), after noting that there was evidence to support a finding of mutual mistake, the court stated that the insurance company was not aided by its contention that it had made no mistake in drafting the policy because reformation will be granted where "one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is." 319 Pa. at 345, 179 A. at 557, quoting from the Restatement of Contracts §505. The estoppel doctrine was specifically enunciated in *General Electric Credit Corp. v. Aetna Casualty and Surety Corp.*, 437 Pa. 463, 474, 263 A. 2d 448 (1970). There we held that, "where one with an insurable interest . . ., at the time of applying for a policy, advises the agent of the insurance company . . . of the desired coverage and truthfully states to such agent the facts involved in the risk, and the agent, acting within his real or apparent authority and without actual or constructive knowledge of the applicant, fails to insert a requested provision, the insurer cannot set up such mistake in avoidance of the policy." We, therefore, find ample authority from commentators and from the pronouncements of this court to support the principle that a party who knowingly causes a written instrument to fail to embody the intent of the other party is estopped from relying on

---

[7] The mistake in *Kaufman* was not so glaring as to warrant an inference that the insurance company had such knowledge, and the plaintiff failed to produce any other evidence of such knowledge. Therefore, reformation was not granted in that case.

such defect in the instrument. Moreover, where the first party knows what the other party actually intended, the instrument will be reformed to conform to that intention.

It remains to determine whether this doctrine would justify relief under the facts alleged in the appellant's complaint. We are satisfied that the complaint contains the elements of estoppel set forth in *GECC v. Aetna, supra*. First, appellant alleged that it was the owner of the building. That allegation establishes that it has an insurable interest. Second, appellant alleged that the applicant, Publishing, disclosed to Marsh that appellant was the owner and Publishing was the lessee of the building. Marsh was thereby in possession of all of the facts relevant to the risk involved in insuring the building. Third, appellant alleged that Marsh knew that appellant was intended to be designated as the insured party, yet Marsh caused Publishing to be named as the insured party. Marsh therefore was advised of the desired coverage and failed to provide that coverage.[8] Fourth, appellant alleged that Marsh was acting as broker and agent for Insurers in obtaining these policies. As we explain below, this allegation is sufficient to establish the liability of the Insurers on a theory of agency.

The lower court, relying on *Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 70 A. 2d 828 (1950), refused to grant relief to a "total stranger" to an insurance policy. *Spires* does not demand such a result in the in-

---

[8] The appellant was not barred from recovery on the face of the pleadings because of their failure and the failure of Publishing to notice the mistake. An insured or the agent of the insured is not charged with knowledge of all of the terms of the policy, see, e.g., *GECC v. Aetna, supra* and cases cited therein. It was the obligation of the appellees to allege and prove that the error in this case was so significant as to warrant the invocation of the theory of constructive knowledge.

stant case. In *Spires*, the plaintiffs leased an airplane hangar to tenants who, under the terms of the lease, were obligated to maintain fire insurance thereon. A fire destroyed the hangar, and when the tenants refused to make a claim, the plaintiffs sued the insurance company directly. We refused to grant relief because the plaintiffs were not referred to in the policy and the tenant and insurance company did not intend them to be third party beneficiaries. That is clearly different from the facts alleged here : Marsh knew that appellant was intended to be designated as the insured party and, but for the alleged mistake appellant would in fact have been a named party in the policy. The contracting parties in *Spires* never intended to create an obligation between the insurers and the plaintiffs. Here the converse is alleged and reformation is sought to effectuate that intent.

The lower court also relied upon *Van Cor, Inc. v. American Casualty Co. of Reading*, 417 Pa. 408, 208 A. 2d 267 (1965). This case merely affirms the rule that, in order for one to be a third party beneficiary, to a contract, the contracting parties must have so intended.

The court below contended that our appellate courts have never granted relief to a "total stranger" to a written contract. *Bugen v. New York Life Insurance Co.*, 408 Pa. 472, 184 A. 2d 499 (1962) refutes this contention. There, while the plaintiff had been named as beneficiary in an earlier life insurance policy, she was not named in the policy upon which liability was predicated. She was granted reformation on the basis of mutual mistake. Where the gravamen of a complaint is the failure of an insurance company to name the plaintiff as a beneficiary, it would deprive the aggrieved party completely of relief to adopt the rule relied upon below.

As a minimum, a pleader must set forth concisely the facts upon which his cause of action is based. Such a requirement is reasonable because, where the complaint lacks facts which are crucial to recovery, it would be unjust to require the defendant to undergo the expense of a trial. *Vitro Manufacturing Co. v. Standard Chemical Co.,* 291 Pa. 85, 139 A. 615 (1927). On the other hand, where the crucial facts are in the exclusive knowledge of the defendant, and the plaintiff so pleads, he should be given considerable latitude. 1 Goodrich Amram, Standard Pennsylvania Practice §1019-1, at 105. While this complaint is far from a model of clarity, it does contain the elements necessary for reformation based upon a theory of estoppel. Marsh was on notice of the facts which it had to refute, and that is all that is required of a complaint. See, e.g., *Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.,* 411 Pa. 383, 192 A. 2d 657 (1963). Of course, it may appear at trial that the appellant cannot produce clear and convincing evidence to prove his allegations, and, in such a case, reformation should be denied. *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A. 2d 332 (1957). It also may appear, from *undisputed* facts established by pretrial discovery and affidavits, that appellees are entitled to summary judgment. See, Pa. R. C. P. 1035. The lower court sustained the appellees demurrers, however, and in that procedural posture, we must accept appellants allegations as true. *Borden et al. v. Baldwin et al.,* 444 Pa. 577, 281 A. 2d 892 (1971), *Cantanese v. Scirica,* 437 Pa. 519, 263 A. 2d 372 (1970). We believe those allegations were sufficient to establish a cause of action against Marsh and that it was error for the court below to have dismissed the action against the defendant.

The liability of appellee Insurers must be derived from Marsh on a theory of agency. The complaint al-

leges that Publishing applied to Marsh "as insurance broker and agent" for each of the insurers. It alleges further that Marsh issued the policies to Publishing as agent for each of the Insurers. Finally, the policies themselves are attached to the preliminary objections and we may refer to them for purposes of deciding a demurrer. *Detweiler v. Hatfield Borough School District*, 376 Pa. 555, 104 A. 2d 110 (1954). Those policies contain the signatures of the individual employees of Marsh in the contract and their signatures appear as agents of Marsh, which in turn was an agent of the insurance companies. An averment of agency is a fact that is admitted for purposes of a demurrer rather than a conclusion of law. *Frazier v. Ruskin*, 203 Pa. Superior Ct. 525, 199 A. 2d 513 (1964). It may well be that the appellant will be unable to convince a finder of fact that Marsh acted as agent for the insurers. See, e.g., *Taylor v. Crowe*, 444 Pa. 471, 282 A. 2d 682 (1971), but these allegations are certainly sufficient to withstand the demurrer.

Decree below reversed and case remanded for proceedings not inconsistent with this opinion. Each party to bear own costs.

Mr. Justice MANDERINO concurs in the result.