## Clair v. Centre Community Hospital

*John R. Miller, Jr.*, of *Miller, Kistler, Campbell, Mitinger & Beik*, for plaintiff.

*Robert L. Martin*, of *Litke, Lee, Martin, Green & Grine*, for defendant.

*Fred Farber*, of *Keystone Legal Services*, for petitioners.

SHARP, *P.J.*, July 6, 1978—This case is before the court on a petition to intervene, filed by three persons who are recipients of medical assistance benefits through the Centre County Board of Assistance. The matter in which they seek to become litigants is an action in equity by Dr. G. F. Clair against the Centre Community Hospital, a non-profit corporation, Committee of the Medical Staff, its chairman, the medical staff, and Unicorp Association composed of the physicians and dentists who have power under the hospital by-laws to adopt rules and regulations concerning membership on medical staff. Plaintiff is a licensed practicing physician with a large portion of his time being devoted to obstetrics and gynecology. As a member of the medical staff of the Centre Community Hospital, he was suspended from the exercise of his privileges in that institution, for failure to abide by certain rules adopted by the medical staff, as affirmed by the governing body of the hospital.

Basically the regulation of the medical staff as approved by the hospital-corporation provided for the care of indigent patients by its physicians on rotational assignment basis.

Dr. Clair, because of the size of his practice, had established a quota of new obstetrical patients that he would accept monthly, and accordingly notified the executive committee of the medical staff that he would be able to comply with the by-law, only within the parameters of his monthly quota system.

Thereafter, he accepted only those assigned indigent patients that were consonant with his quota.

As a result, upon recommendation of the executive committee of the medical staff, the board of trustees, suspended Dr. Clair from the exercise of all hospital staff privileges.

The action for relief seeks the removal of his suspension, restraining defendants from interfering with the practice of plaintiff's profession as relates to staff privileges, and enjoining the implementation of the offending by-law as being illegal and unenforceable.

As required, a hearing on the intervention petition was held, at which time the three prospective intervenors testified. In substance, their testimony was an expression of their past or present dissatisfaction with the referral system for indigents by the hospital. They did not wish the present referral system abrogated, fearing future impossibility of obtaining free medical assistance. However, these fears were unsupported by any factual information. None of the intervenors are now, nor have they ever been, under the service of Dr. Clair.

To initially qualify as an intervenor, the applicant must fall within one of the classifications established by Pa.R.C.P. 2327.

Intervenors concede that only condition (4) thereof would be applicable. Rule 2327 and its appropriate section read: "At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if . . . (4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

If one of the established criteria of Rule 2327 has been met, the court may still refuse intervention for any of the reasons set forth in Pa.R.C.P. 2329.

Thus, the initial inquiry of this court shall be to determine whether petitioners qualify under Rule 2327, and if they do, to then determine whether or

not it should be permitted under any of the limitations of Rule 2329.

However, if petitioners cannot establish an initial right to intervene under Pa.R.C.P. 2327(4), the matter is foreclosed, and there is no necessity of further inquiry.

## IS ANY LEGALLY ENFORCEABLE INTEREST OF INTERVENORS AFFECTED BY THE DETERMINATION OF THE ACTION?

In brief, the claim of legally enforceable interest in intervenors has its genesis in their assertion that they are third party beneficiaries.

The contract under which they claim is the so-called "community service assurances" given by the Commonwealth of Pennsylvania to H.E.W., under the provisions of the Hospital and Medical Facilities Amendments of August 18, 1964, 78 Stat. 447, to the Act of August 13, 1946, 60 Stat. 1041, commonly known as the Hill-Burton Act, 42 U.S.C.A. §291 et seq. Such assurances are undertaken by each applicant under the act and regulations, and are implicit in every grant made under Hill-Burton auspices.

The argument of intervenors is best understood against the backdrop of this act. Section 291 of the Hill-Burton Act provides that funds appropriated for the purpose of hospital construction and modernization be distributed by allotment to the various states according to regulations adopted by the Surgeon General prescribing priorities, standards, needs and state plan requirements one of which is that: " . . . (2) there will be made available in the

facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor . . . " section 291c(e).

The implementing regulations further provide that recipients of programs such as Medicare and Medicaid shall be afforded these institutional services, see 42 C.F.R. §53.113.

The application of defendant-hospital, through its predecessor Centre County Hospital, for construction aid, affirmed its acquiescence to the "community service obligations" of the act and supportive regulations.

However, in 1976, defendant-hospital was cited for failure to maintain a formulated plan for care of those entitled as "community service patients" resulting in the adoption of a by-law, formulated and approved by the medical staff, providing, inter alia, for a rotating physican-patient referral system, the subject of this action.

Thus, there are two issues initially presented: (1) Are the proposed intervenors third party beneficiaries under the "community service obligations" required by the Hill-Burton Act; and, if so, does this provide a legally enforceable interest of the type required by Pa.R.C.P. 2327(4), and/or (2) are they third party beneficiaries under the medical staff regulations and hospital by-laws to such extent they have a legally enforceable interest under the above procedural rule?

## INTERVENORS' STATUS AS THIRD PARTY BENEFICIARIES ARISING OUT THE OF ASSURANCES REQUIRED BY HILL-BURTON

Broadly speaking, intervenors are within the

class of persons who have been designated as beneficiaries of the "community service obligations" required by the Hill-Burton Act, as has been established in Euresti v. Stenner, 458 F. 2d 1115 (10th Cir. 1972); Organized Migrants in Community Action, Inc. v. James Archer Smith Hospital, 325 F. Supp. 268 (S.D. Fla. 1971); Cook v. Ochsner Foundation Hospital, 319 F. Supp. 603 (E.D. La. 1970); Corum v. Beth Israel Medical Center, 359 F. Supp. 909 (S.D. N.Y. 1973); Saine v. Hospital Authority of Hall County, 502 F. 2d 1033 (5th Cir. 1974); Don v. Okmulgee Memorial Hospital, 443 F. 2d 234 (10th Cir. 1971). Nevertheless, certain courts expressed doubt or denied the existence of a remedy as being reserved to individuals. See Stanturf v. Sipes, 224 F. Supp. 883 (W.D. Mo. 1963), and Don v. Okmulgee Memorial Hospital, supra.; Rogers v. Provident Hospital, 241 F. Supp. 663 (N.D. Ill. 1965); but the greater weight of authority seems to encompass them as beneficiaries.

However, the fact that they are of this genus does not automatically insure their ability to directly enforce Hill-Burton assurances in the courts. While the ability of this class to bring suit was initially recognized, it was subsequently qualified by the enactment of the National Health Planning and Resources Development Act of January 4, 1975, 88 Stat. 2263, 42 U.S.C.A. §300p-2(c), which provides in part:

"An appropriate action to effectuate compliance with any such assurance may be brought by a person other than the Secretary only if a complaint has been filed by such person with the Secretary and the Secretary has dismissed such complaint or the Attorney General has not brought a civil action for

compliance with such assurance within 6 months after the date on which the complaint was filed with the Secretary."

In Gordon v. Forsyth County Hospital Authority, Inc., 409 F. Supp. 708 (N.D. N.Car. 1975), individual action to enforce compliance with an adopted Hill-Burton plan was dismissed for failure to first exhaust the administrative remedies prescribed by the statute (cited above).

Intervenors concede that the administrative remedies must be exhausted as to parties who are *plaintiffs* seeking to enforce Hill-Burton assurances, but are inapplicable to defendants. This argument, albeit its ingenuity, is nevertheless fallacious.

The entire gravamen of their plea to intercede is that the hospital by-law, if not enforced, will abrogate the Hill-Burton assurances, and their presence is required to safeguard enforcement of the same.

Thus, whether they are styled plaintiff or defendant in the action, their underlying motive is the same.

Also, in support of their position the court is referred to Lieberman v. Howard Johnson's, Inc., 68 D. & C. 2d 129 (1973). There, a disgruntled motorist brought suit against the restaurant chain, alleging that it, as a sublessee of a lease between the turnpike commission and a major oil company, was overpricing its products. On challenge to his status as a proper party, he claimed as third party beneficiary under the lease. In upholding his standing to sue, the court properly noted that where the thrust of a contract is for the benefit of individual members of the public, then a third party benefit is

created which can be enforced by a member of the public in the event of a breach by the private contractor.

The case is inapposite to the present suit. While intervenors may, under certain conditions and circumstances, have the right to sue to enforce the Hill-Burton assurances (see Organized Migrants in Community Action v. James Archer Smith Hospital, supra; Euresti v. Stenner, supra, etc.) nevertheless, under the language of section 300p-2(c), a complaint and a waiting period are prerequisite to the exercise of this right.

Also, the court is uncertain whether Lieberman, supra, is presented as an alternative; if so, to the extent that it is cited in support of a right to sue under general principles of contract law, independent of section 300p-2(c), supra, this effort must likewise fail, for such right is predicated upon an antecedent breach by the private contracting party. In the present action, no breach by defendant-hospital of its assurances has been shown. There is nothing in the testimony to show a failure by the hospital to provide the required services, and the evidence, at most, consists of unsophisticated and unfounded fears that eradication of the by-law might result in a default by the hospital. However, fears are fallible and fantasy cannot replace facts, and, absent proof of such breach, the intervenors have not met the burden required of them.

As an alternative, intervenors argue that the existence of an administrative complaint system to enforce hospital assurances should not block direct enforcement of Hill-Burton obligations as it applies to physician staff priviliges. This argument must also fail. The very purpose of the administrative procedure engrafted into section 300p-2(c) is to

prevent harassing, vexatious and ill-founded actions. If such prophylactic measures are required to insulate hospitals from ill-conceived "community service obligation" actions, an equal or greater measure of protection is required to protect hospitals and their staff from those seeking to intermeddle in the internal affairs of such institutions.

No matter the guise in which their motives are clothed, it is clear that the sought intercession is founded upon the preservation of Hill-Burton assurances. As such, it falls clearly within the ambit of section 300p-2(c) of the National Health Planning and National Resources Act. There having been no prior exhaustion of the required administrative remedies, the intervenors therefore cannot claim the status of beneficiaries eligible to participate in the suit.

## INTERVENORS AS THIRD PARTY BENEFICIARIES OF THE MEDICAL STAFF REGULATIONS

As a further alternative, intervenors proffer themselves as beneficiaries of the hospital staff by-laws. They propose that since medical staff by-laws constitute a contract between the medical staff and the hospital: Berberian v. Lancaster Osteopathic Hospital Association, 395 Pa. 257, 149 A. 2d 456 (1959); they thereby become the beneficiaries of that contract.

This may be philosophically accurate, but inaccurate legally. To be a third party beneficiary to a contract, the contracting parties must have so intended: Line Lexington Lumber & Millwork Co. v. Pennsylvania Publishing Corp., 451 Pa. 154, 301

A. 2d 684 (1973). In Spires v. Hanover Fire Insurance Company, 364 Pa. 52, 56, 70 A. 2d 828 (1950), it was stated:

"To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by one of the parties to the contract and the third person that the latter should be a beneficiary, but both parties to the contract must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created and must affirmatively appear, in the contract itself."

See also Burke v. North Huntingdon Township, 390 Pa. 588, 136 A. 2d 310 (1957); Silverman v. Food Fair Store, Inc., 407 Pa. 507, 180 A. 2d 894 (1962); Mowrer v. Poiriers & McLane Corp., 382 Pa. 2, 114 A. 2d 88 (1955).

Medical staff regulations are created for the governing of the relationship between the professional staff and the parent institution, and it certainly does not follow that their creation was with any specific intent to benefit the intervenors. To so hold would be to open institutions to indiscriminate intermeddling under the guise of a beneficial interest.

Intervenors nevertheless insist that by virtue of the community service assurances of hospital, this particular staff-hospital regulation is merely a vehicle for providing such assurances, and thereby is merged into the "Hospital-State" contract. They further state that if the regulation is stricken, there

is a possibility of deprivation of required services, and that they should be permitted to intervene.

The argument lacks merit. The regulation undoubtedly is one of many vehicles used by the hospital to guarantee compliance with "community service obligations" imposed by Hill-Burton, and the possibility of failure of one of many intergrated administrative devices used to achieve compliance does not merit the conclusion that the obligations are not, and will not be, met by the hospital. Assuming arguendo that plaintiff would be successful in having the regulation declared void, in such case, the hospital could employ many alternative devices, including the hiring physicians to provide the reasonable volume of medical services required by the commitment.

If it should develop that an invalidation of the regulation coupled with subsequent inaction on the part of the hospital would result in a deprivation of services, then the intervenors could have their day in court. However, to permit their intervention on unsupported, unsubstantiated possibilities would be to legitimatize their entry into a matter where no justiciable interest exists.

Thus, by any measure, intervenors have not satisifed the criteria necessary to their participation in the action. To hold them to any lesser degree of accountability for entry into this suit would be tantamount to welcoming the uninvited stranger while turning the guest of honor away at the door.

Having so determined, there is no necessity to consider the aspects of intervention in light of Rule 2329.

Therefore, we conclude that intervenors have no legally enforceable interest which would be bound

by a judgment in this action, and we accordingly enter the following

## ORDER

And now, July 6, 1978, the petition of Patricia Geneve, Linda Winn, and Joan Prisk is denied. Costs to be paid by petitioners.