**SPECIAL JET SERVICES, INC., a corporation, T. R. Paul and S. Kent Rockwell, Appellants,**

v.

**FEDERAL INSURANCE COMPANY, an insurance corporation, Appellee.**

No. 80–1755.

United States Court of Appeals, Third Circuit.

Argued Nov. 7, 1980.

Decided March 17, 1981.

---

Paul A. Manion (argued), Kerry A. Kearney, Susan B. Richard, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellants.

Donald W. Bebenek (argued), Michael V. Gilberti, Meyel, Darragh, Buckler, Bebenek

& Eck, Pittsburgh, Pa., John Martin, Edward O'Brien, Bigham, Englar, Jones & Houston, New York City, for appellee.

Before ADAMS and SLOVITER, Circuit Judges, and BROTMAN,* District Judge.

## OPINION OF THE COURT

BROTMAN, District Judge:

This appeal arises out of the crash of a private twin-engine Mitsubishi MS–2J aircraft in Raton, New Mexico on August 25, 1978, resulting in the deaths of all five passengers and the pilot. There was no co-pilot aboard the plane during the flight in question. The aircraft was owned by appellants, T. R. Paul and S. Kent Rockwell (owners), and was being operated under a leasing arrangement by appellant, Special Jet Services, Inc. (Special Jet), a charter airplane operation. At the time of the crash, the airplane was being flown on behalf of the owners and was piloted by an employee of Special Jet, concededly acting within the scope of his employment.

The personal representatives of the deceased passengers instituted wrongful death and survival actions against Special Jet Services, Inc. Special Jet called upon Federal Insurance Company (Federal), the issuers of the liability and property damage insurance policy on the aircraft, to defend these actions and to indemnify it to the extent of coverage under the policy.[1] In addition the owners requested that Federal reimburse them for the loss of the aircraft. Federal refused to defend or indemnify Special Jet or to reimburse the owners. Special Jet thereupon instituted a declaratory judgment action in the Court of Common Pleas of Allegheny County requesting that Federal be required to defend and indemnify against the claims asserted in the wrongful death and survival actions and to reimburse the owners for the loss of the aircraft.[2] Federal then removed the case to the United States District Court for the Western District of Pennsylvania.[3]

Subsequently, Federal moved for summary judgment, under Fed.R.Civ.P. 56, on the ground that an endorsement to the insurance policy excluding coverage for flights on which the pilot in command is not accompanied by a co-pilot relieves Federal of liability.[4] Special Jet opposed this motion

---

* Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

1. At the time of the accident, there was in existence an Aircraft Hull and Liability Insurance Policy, I–CHL–2940, covering the period of October 12, 1977 to October 12, 1978, issued by appellee, Federal Insurance Company insuring T. R. Paul and S. Kent Rockwell, as named insureds, and Special Jet as an additional insured.

2. Special Jet named the owners as "involuntary petitioners."

3. 28 U.S.C. § 1441 et seq.

4. The endorsement in question, Endorsement No. 2 provides:

It is agreed that:
1. Item 7—PILOTS—of the Declarations shall read as follows:
 The coverage afforded by this policy shall not apply while the aircraft is operated in flight by other than the following:
 (a) As Pilot In Command—Any person holding a currently effective certificate issued by the Federal Aviation Administration designating him or her a commercial pilot, airplane category with unlimited multi-engine land and instrument ratings, who has a minimum of 3,500 total logged flying hours as pilot in command including at least 2,500 hours in multi-engine aircraft of which not less than 500 hours have been in Mitsubishi MU–2 model aircraft and has successfully completed the manufacturers recommended or approved flight and ground schools in Mitsubishi MU–2J model aircraft, and
 (b) As Co-Pilot—Any person holding a currently effective certificate issued by the Federal Aviation Administration designating him or her a commercial pilot, airplane category, with unlimited multi-engine land and instrument ratings, with a minimum of 1,000 total logged flying hours including at least 250 hours in multi-engine aircraft and who has successfully completed the manufacturers recommended or approved ground school, or T. R. Paul, while holding a currently effective certificate issued by the Federal Aviation Administration designating him a private or commercial pilot with airplane category, unlimited multi-engine land ratings and who has a minimum of 1,000 total logged flying hours including at least 250 hours in multi-engine aircraft.
2. The requirements for a Co-Pilot as set forth in Paragraph 1(b) of this endorsement

on the grounds that there existed material issues of fact as to: (1) whether the parties had agreed upon single pilot coverage for the aircraft; and, (2) whether the co-pilot provision in the policy constituted an exclusion; and, if so, whether the existence and effect of that provision had been explained to the insured. The district court granted Federal's motion for summary judgment, and Special Jet appealed. This Court assumes jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

In reviewing an order granting summary judgment, "the appellate court is required to apply the same test the district court should have utilized initially." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a summary judgment motion,

> Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive benefit of the doubt.

*Goodman v. Mead Johnson & Co., supra*, 534 F.2d at 573. *See Delong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1141 (3d Cir. 1980); *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978). Our examination of the record in the present case, in light of the appropriate standard of review and the applicable law, reveals a genuine issue of fact as to the type of insurance coverage which was to be provided. Thus,

summary judgment should not have been granted.

 Under the law of Pennsylvania,[5] when a written contract is clear and unambiguous, parol evidence relating to earlier conversations is inadmissible. *Brokers Title Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174 (3d Cir. 1979). An exception to this general rule occurs where an insurance company incorporates into an insurance policy a provision which it knows to be inconsistent with the agreement of the parties as to the risks insured. Under those circumstances the company is estopped from relying upon that provision to avoid liability under the policy. *Line Lexington Lumber & Millwork Co., Inc. v. Pennsylvania Publishing Corp.*, 451 Pa. 154, 301 A.2d 684 (1973); *General Electric Credit Corp. v. Aetna Casualty and Surety Co.*, (GECC) 437 Pa. 463, 263 A.2d 448 (1970). In *GECC*, the plaintiff sold certain restaurant equipment to a restaurant operator. Under the terms of the financed sale, the operator was required to maintain fire insurance on the equipment payable to the parties as dictated by their interests therein. GECC's attorney testified that he had informed an agent for the insurance companies that GECC wanted coverage against loss regardless of any action on the part of the primary insured; however, two of the seven policies issued provided that the right of GECC, an additional insured, to recover was derivative of that of the primary insured. The equipment was destroyed in a fire set by the restaurant operator, and the insurance companies which had issued the derivative policies refused to compensate GECC for its loss. The Pennsylvania Supreme Court held that:

> Where one with an insurable interest ... at the time of applying for a policy, advises the agent of the insurance company ... of the desired coverage and truthfully states to such agent the facts in-

---

shall not apply with respect to ferry flights or flights incidental to repair or maintenance provided the aircraft is operated in flight under Visual Flight Regulations with no passengers (other than crew) aboard the aircraft.

5. Pennsylvania law is applicable. *See Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964); *Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir. 1978).

volved in the risk, and the agent, acting within his real or apparent authority and without the actual or constructive knowledge of the applicant, fails to insert a requested provision, the insurer cannot set up such a mistake in avoidance of the policy.

437 Pa. at 474, 263 A.2d at 455. A new trial was ordered since the trial court had failed to instruct the jury "that, as a matter of law, if they believed the facts as alleged by [the attorney] the mere failure to read the policies and discover the error prior to the fire would not bar recovery by GECC under [the] policies." 437 Pa. at 480–481, 263 A.2d at 458.

In *GECC*, the derivative clauses were apparently included in the policies due to a mistake on the part of the insurance agent. In *Line Lexington, supra*, the Supreme Court of Pennsylvania extended its holding in *GECC* to the situation where an insurance agent, knowing that the insured expects a requested form of coverage, nevertheless intentionally omits that coverage from the insurance policy. The insurance company is then estopped from relying on this defect in the policy. 451 Pa. at 159–160, 301 A.2d at 687.

The appellants have presented evidential sources which raise questions as to the inclusion in the insurance policy of the provision prohibiting coverage for any kind of single pilot passenger operations.[6] The questions concern whether the policy was issued in accordance with Special Jet's oral instructions to, and agreement with Federal's agent, Associated Aviation Underwriters (AAU), or in accordance with AAU's representations that it would provide coverage as requested by Special Jet. The appellants contend that the policy should have contained coverage for single-pilot flights made for or on behalf of the owners.

In setting forth their argument, they first point out that Richard Ryan, the president of Special Jet, recommended to the owners of the aircraft that insurance for the leased airplane be purchased through his brother, William Ryan, an insurance broker. (Dep. of R. Ryan, Appellants' App., pp. 91–92). The owners agreed and relied upon R. Ryan to obtain (proper and adequate) coverage for the aircraft at a competitive price. Rockwell owned other airplanes of a similar category, and he instructed R. Ryan to obtain for this plane the same type of coverage that he carried on the others. Such coverage included single-pilot coverage on flights made for or on behalf of the owner. (Dep. of Rockwell, Appellants' App., pp. 81–82, 85, 87; Dep. of Paul, Appellants' App., pp. 67–68, 74–76).

R. Ryan then contacted W. Ryan who requested and received permission from Paul to solicit quotations for aviation insurance. (Dep. of W. Ryan, Appellee's App. p. 11b). Subsequently, W. Ryan contacted Ronald Olson, an underwriter for AAU, for such a quotation. In the course of their conversations, single-pilot coverage for the airplane was discussed, although the extent of such discussions is unclear from the record. (Dep. of R. Olson, Appellants' App., pp. 36–39). Notations, made by Olson, of the conversations also indicate that single-pilot coverage and costs associated with that coverage were discussed. (Plaintiffs' Dep. Exhibits 2a, 26, Appellants' App., pp. 108–109). However, Olson contends that one of the notations, "and agreed to single-pilot," refers to ferry flights for maintenance or picking up a charter but not to passenger flights. (Dep. of Olson, Appellants' App., pp. 41–42). As a result of the conversations between W. Ryan and Olson, an oral binder for coverage was issued on October 12, 1977.

The deposition statements made by Olson and the accompanying notes raise questions about the extent to which single-pilot coverage was examined, but they are not adequate by themselves to bar summary judgment. The appellants, however, have made further allegations which provide sufficient support for the denial of summary judgment and for a fuller exploration into the facts of this case. They assert that on October 25, 1977, R. Ryan telephoned Fred-

---

**6.** See note 4.

erick Parker, an underwriter for AAU and a superior of Olson's, for the purpose of discussing and clarifying the coverage of the aircraft. R. Ryan claims that, during this conversation, he specifically requested that the insurance policy be written to provide coverage for single-pilot operations of flights made for or on behalf of the owners. Parker allegedly assured R. Ryan that such coverage would be provided under the Federal policy and that two pilots would be required only when the aircraft was used for charter operations. [As noted earlier, at the time of the crash, the airplane was being flown on behalf of the owners and not as a charter.] (Dep. of R. Ryan, Appellants' App., pp. 93–95). Parker has no recollection of this conversation and denies ever having made such a representation. (Dep. of Parker, Appellants' App., pp. 52, 54).

■ R. Ryan later received Special Jet's copy of the insurance policy, and in reliance upon Parker's assurance that single-pilot coverage would be included, he did not read the policy. He merely filed it. (Dep. of R. Ryan, Appellants' App., pp. 99, 101, 104–105). The policy as issued did not provide for any single-pilot coverage for flights made on the owners' behalf but rather restricted single-pilot coverage to ferry or maintenance flights.[7]

■ Federal argues that, even if the alleged representations had occurred, it still is not estopped from denying coverage since Special Jet was not a signatory of the insurance contract. This argument that the alleged statements must have been made to a signatory is without merit. For estoppel to operate, it is only necessary that Special Jet have had an insurable interest. See *GECC, supra*, 437 Pa. at 474, 263 A.2d at 455. The risks insured against by policies for liability and indemnification insurance are predicated upon the "loss and injury caused by its use for which the insured might be liable.

Thus almost any hazard which may expose a person to pecuniary loss may constitute a valid insurance interest." J. Appelman, 6B INSURANCE LAW and PRACTICE, § 4253, at 19 (1970). As a lessee of the aircraft, appellant Special Jet was exposed to the risk of suit for injuries or damages resulting from its use of the aircraft, and, therefore, had an insurable interest in the leased airplane. *See Norris v. Insurance Co. of North America*, 26 N.C.App. 91, 101, 215 S.E.2d 379, 387–388 (1975). *See also Virginia Heart Institute, Ltd. v. Northwest Pennsylvania Bank & Trust Co.*, 448 F.Supp. 215, 218 (W.D.Pa.1978).

■ Appellants have alleged that Special Jet requested a specific type of insurance coverage and that an agent of Federal represented such coverage would be provided. If the facts transpired as alleged by the appellants then Federal is estopped under Pennsylvania law from relying on the restrictive co-pilot provision to escape liability under the policy. Whether events did indeed transpire as asserted by appellants raises a material issue of fact; thus, Federal's motion for summary judgment was erroneously granted by the district court.

In light of our disposition of this case, we need not address appellants' second argument.

For the reasons set forth herein, the judgment of the district court will be vacated and the case remanded.

---

7. See note 4. Ryan's failure to read the policy is not determinative. Under Pennsylvania insurance law, there is no general duty to read the policy; rather, the insured may be justified in relying on oral representations made to him at the time he applied for the policy. *See Rempel v. Nationwide Life Ins. Co.*, 471 Pa. 404, 370 A.2d 366, 368–69 (1977) (plurality opinion).