# Eilenberger *versus* Protective Mutual Fire Insurance Company.

1. If there was a mutual mistake between the contracting parties to an insurance policy, parol evidence is admissible to reform the policy.

2. The fraud or mistake of a knavish or blundering agent, done within the scope of the powers given him by an insurance company, will not enable the latter to avoid a policy to the injury of the insured, who innocently became a party to the contract.

3. Where an agent of the insurer has cheated the insured into signing the warranty and paying the premium, and the policy was issued upon the false statements of the agent himself, the insured may prove the fact and hold the principal to the contract as if he had committed the wrong.

4. In a mutual insurance company membership dates from the consummation of a contract and not before. During negotiations for insurance, a mutual company occupies no other or better position than one organized on the stock plan, and cannot profit by the fraud of its agent; for the membership arises from but does not precede the contract. As to all preliminary negotiations, the agent acts only on behalf of the company.

[Eilenberger *v.* Protective Mutual Fire Ins. Co.]

5. A company cannot escape the consequences of the fraud or mistake of its agent, by inserting a stipulation in the policy, that such agent shall be deemed the agent of the insured, who, at the time of applying for the policy, was ignorant of the insurer's intention to so stipulate.

March 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Wyoming county*: Of January Term 1879, No. 176.

Debt by R. E. J. Eilenberger against the Protective Mutual Fire Insurance Company, for a loss occasioned by the burning of plaintiff's store and contents, which were insured in the defendant company. The defendant pleaded *nil debet*, payment, set-off with leave, &c., and afterwards, by permission of the court, filed an amended plea, assigning breaches in the warranty. The application was to form a part of the policy of insurance, and all statements therein made were to constitute warranties on the part of the insured.

The application closed in these words : " The following questions must be answered fully and definitely by the agent, and when this is not done, the application will be declined : Have you personally examined this risk ? Do you think it advisable to take it ? Yes. Are stoves, pipes and chimneys all secure ? Yes. Are you personally acquainted with the applicant and risk and do you fully approve it ? Yes. Has he ever met with loss by fire ? No."

The policy contained the following condition :

" It is agreed that the person or persons, if any, other than the assured, who have procured this insurance to be taken by this company, shall be deemed to be the agent or agents of the assured and not of this company, in any transactions relating to this insurance. * * *

One Soellner, was the agent of the company, and in writing down the answers of the insured when seeking the application he falsely misstated them. They will be found set forth substantially in the opinion of this court. Upon motion of defendant, the court, Ingham, P. J., withdrew from the consideration of the jury the testimony of Soellner as to his writing these answers, as well as the testimony of the plaintiff in regard to the same, and then entered a compulsory nonsuit, on the ground that the plaintiff had given no sufficient evidence to entitle him to recover a verdict as is in law sufficient to maintain the action. The withdrawal of this evidence and the entry of the nonsuit were assigned for error by the plaintiff, who took this writ.

*Wm. M. Piatt & Sons* and *Sittser & Harding*, for plaintiff in error.—As the application precedes the policy, the insured could not be presumed to know what its conditions were, and he cannot assuredly, on such a ground, be deprived of the benefits of his contract : Wood's Ins. 278, 401, and cases cited note 6 ; Ins. Co. *v.*

8 NORRIS—30

Wilkinson, 13 Wallace 222; Roth *v.* City Ins. Co., 6 McLean 364. In order to be efficacious, such notice must be given before the negotiations are completed: Wood's Ins. 644; Commercial Ins. Co. *v.* Ives, 56 Ill. 402; Bebee *v.* Hartford Ins. Co., 25 Conn. 51. Notice to the agent was notice to the company and under such circumstances the company is estopped: Wood's Ins. 276 and 632, and cases there cited: Howard's Ins. Co. *v.* Bruner, 11 Harris 50; Ins. Co. *v.* Cooper, 14 Wright 331; Rowley *v.* Empire Ins. Co., 36 N. Y. 550; Ætna Ins. Co. *v.* Olmstead, 21 Mich. 246. The agent in this case had sufficient power to receive notice: Flanders's Ins., 2d 'ed. 115; Bebee *v.* Hartford Ins. Co., 25 Conn. 51; Lycoming Ins. Co. *v.* Woodworth, 2 Norris 223. The question is not only what powers the agent had, but more particularly what power did the company hold him out as possessing: Wood's Ins. 640, 661, 662; Eclectic Life Ins. Co. *v.* Fahrenkrug, 68 Ill. 463; Haughton *v.* Embank, 4 Camp. 88; Neal *v.* Erving, 1 Esp. 61; Perkins *v.* Washington Ins. Co., 4 Cowen (N. Y.) 645; Beal *v.* Park Fire Ins. Co., 16 Wis. 241; New York Insurance Co. *v.* National Ins. Co., 20 Barb. (N. Y.) 476; 85; Nicoll *v.* American Ins. Co., 3 Wood. & M. (U. S.) 529; Gloucester Manf. Co. *v.* Howard Fire Ins. Co., 5 Gray (Mass.) 497; Lungstrass *v.* German Ins. Co., 57 Mo. 107; Palm *v.* Medina Ins. Co., 20 Ohio 529; Dayton Ins. Co. *v.* Kelly, 24 Ohio 345; Flanders's Ins. 2d ed., p. 112 and cases cited; Hough *v.* City Fire Ins. Co., 29 Conn. 10.

*P. M. Osterhout*, for defendant in error.—Soellner's authority was only that of a solicitor of risks. The acts of a mere agent authorized to represent the company, beyond the specific powers committed to him cannot be the ground of estoppel in a matter unconnected with the exercise of his powers. This can take place only when the knowledge lying at the foundation of the estoppel comes home to those officers who exercise the corporate powers of the company, or to an agent whose powers relate to the very subject out of which the estoppel arises: Mitchell *v.* Ins. Co., 1 P. F. Smith 402; Susquehanna Ins. Co. *v.* Perrine, 7 W. & S. 348; Cooper *v.* Ins. Co., 14 Wright 299; Ins. Co. *v.* Johnson, 11 Harris 72; Smith *v.* Ins. Co., 12 Id. 320. If Soellner made the mistake in the answers it was negligence in the insured not to read them over to see if they were correct: Greenleaf's Est., 2 Harris 496: Penn. Railroad Co. *v.* Shay, 1 Norris 198. The warranty by plaintiff was a condition precedent to defendant's liability: Cooper *v.* Ins. Co., *supra*; Phillips on Insurance 346; Ins. Co. *v.* Arthur, 6 Casey 315.

Mr. Justice TRUNKEY delivered the opinion of the court, April 4th 1879.

[Eilenberger v. Protective Mutual Fire Ins. Co.]

Soellner was defendant's agent and as such solicited insurance, made out applications, sent them to the home office, and the company issued the policies and forwarded them, for delivery, to the agent who received and remitted the premiums.   The plaintiff's application, thus solicited, prepared and transmitted, contained a stipulation that it should form a part of the policy, and all statements therein constitute warranties by the insured.   Among the statements are these : " Chimneys are constructed from the ground; the title is in name of the insured, in fee-simple; and the building has never been on fire, nor has the applicant suffered loss by fire."   In fact, the chimney was built from the loft, the title of the premises was in name of applicant's wife, and the building had been on fire and the plaintiff burned out once before.   He showed Soellner through the house, correctly answered all questions asked, did not read or hear the answers read, and thought everything was down in the application, as he had stated, when he signed it.   Soellner examined the chimney and wrote the answer respecting it from his own knowledge.   In response to the applicant's answer that his wife owned the building, he said, that would make no difference, he could insure it with his stock.   He noticed there had been a fire, and asked the applicant if he had suffered loss by fire, and was answered he had been burned out once before. The written falsehoods were Soellner's mistakes.   Thus stood the facts, shown by the oral testimony of the plaintiff and Soellner, the truth of which was admitted by the motion for nonsuit.   Whatever credit the jury might have given them, had the cause been submitted, the court, in disposing of the motion, was bound to treat their testimony as true and draw every reasonable inference therefrom in favor of the plaintiff.   In considering whether there was error in ordering nonsuit, it matters not that a portion of the evidence was ruled out before the motion, for if competent it should not have been withdrawn, and if incompetent there was no error in the judgment.

The defendant relies on the authority of Susquehanna Insurance Co. v. Perrine, 7 W. & S. 348; Smith v. Insurance Co., 12 Harris 320 ; State Mutual Fire Insurance Co. v. Arthur, 6 Casey 315, and Cooper v. Farmers' Mutual Fire Insurance Co., 14 Wright 299, to preclude oral testimony of its agent's fraud or mistake in preparing the application.   In the first, the by-laws were specific in the requirements of the application, and that, if made by a surveyor, he should be deemed the applicant's agent.   It was said that knowing he would become a member of the company, on acceptance of the policy, the presumption is that he made himself acquainted with its charter and regulations, and that he was bound to know that the surveyor was acting as his instrument and not as the instrument of the company ; and consequently a material fault in the application vitiated the policy.   Smith's case rests upon a doctrine that ought to prevail everywhere, to wit : " The principal is bound by the acts

of his agent whilst he acts within the scope of the deputed authority; but if, departing from that sphere, or continuing in it, he commits a fraud on his principal, a *particeps criminis* shall not profit by the fraud." In 'the Arthur case the facts in issue were " nothing more than knowledge by the defendants of the manner in which the buildings were used at the time the policy was made." The warranty and its breaches were considered as admitted by the pleadings. Upon the single fact that the assurer knew that the buildings were not occupied as warranted by the assured, it was decided that knowledge by the underwriter, or by him and the assured, is no basis for reforming the policy ; though it is conceded that equity will reform it where there was a mutual mistake of facts. It was ruled in Cooper's case that what is a warranty in a policy, by its terms, cannot be shown by parol evidence to have been a mistake. There the agency of Mr. Herr, who filled the application, was defined in writing " to make surveys, receive applications, premium notes and cash premiums for said company agreeably to the by-laws." It is said in the opinion that the agent had no authority to make the contract or arrange any of its conditions ; that if he and Cooper were both mistaken, his mistake was not that of a party to the contract ; that the plaintiff's offer was not to show a mutual mistake ; that it was a fatal objection to the offer that if admitted it would not show a mistake by both parties, and, so far as appeared, the defendants had not been informed of any representation other than in the written application upon which they issued the policy. The offers themselves 'show that Cooper neither read nor heard read the answers, but they also show that he and the agent talked over and agreed that the judgments were not encumbrances and the answer was written accordingly. The insured knew what was in the warranty he had signed.

An examination of the facts in those cases will aid in understanding the scope of the opinions. In each there was no question but that the warranty was made, and it was conceded that if there were a mutual mistake between the contracting parties, parol evidence is admissible to reform the policy. None declares that the fraud or mistake of a knavish or blundering agent, done within the scope of the powers given him by the company, will enable the latter to avoid a policy to the injury of the insured, who innocently became a party to the contract. The authorities go far, very likely not too far, in holding the assured responsible for his warranty, and in excluding oral evidence to contradict or vary it; but they do not establish that where an agent of the assurer has cheated the assured into signing the warranty and paying the premium, and the policy was issued upon the false statements of the agent himself, the assured shall not prove the fact and hold the principal to the contract, as if he had committed the wrong.

The defendant is a mutual company, and holders of its policies

are members.    Membership dates from consummation of the contract, and not before.    During negotiations for insurance, a mutual company occupies no other or better position than one organized on the stock plan, and cannot profit by a contract induced by the fraud of its agent; for the membership arises from, but does not precede, the contract: Lycoming Fire Ins. Co. *v.* Woodworth, 2 Norris 223.    As to all preliminary negotiations, the agent acts only on behalf of the company.    A stipulation in a policy that if the agent of the company, in the transaction of their business, should violate the conditions, the violation shall be construed to be the act of the insured, and shall avoid the policy, will not render the insured responsible for the mistakes of the agent: Columbia Ins. Co. *v.* Cooper, 14 Wright 331.    This was said where the mistake was of representations, and does not qualify the rule which holds the assured upon his covenants or warranties.    But it shows that a company contracting by its agent will not always escape the consequences of the fraud or mistake of its agent, by inserting a stipulation in the policy that such agent shall be deemed the agent of the insured, who, at the time of applying for the policy, was ignorant of the insurer's intention to so stipulate.

Upon the verity of the plaintiff's testimony, he had no knowledge of the fraud or mistake of the defendant's agent previous to the fire.    The agent falsely induced him to sign a statement he had not made and did not intend to make.    Moreover, appended to the application is the following, signed by the agent: " The following questions must be answered fully and definitely by the agent, and when this is not done, the application will be declined: Have you personally examined this risk?    Do you think it advisable to take it?    Yes.    Are stoves, pipes and chimneys all secure?    Yes.    Are you personally acquainted with the applicant and risk, and do you fully approve it?    Yes.    Has he ever met with loss by fire?    No." Thus answered the insurer's agent, without which the policy would not have been issued.    The application and agent's certificate agree. Oral and written evidence shows that the agent was acting within the scope of his employment, but in bad faith to his principal.    He was not only to solicit and make out applications, but his own answers, from personal examination, were relied upon by the insurer in making the contract.    By what rule shall that contract be void, as respects an innocent party, who first discovered the fraud after his loss?    The assurer believed both statements; the assured knew nothing of the contents of either.    Which party shall suffer?    By elementary principles, the one who employed and gave character to the agent, and issued the policy upon his act, and not he who innocently paid his money.

It is not alleged the case was defective for any cause other than breach of warranty.

Judgment reversed and a *procedendo* awarded.