### Litto, Appellant, v. Public Fire Ins. Co.

Argued April 12, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Edward E. Petrillo,* for appellant.

*Frank B. Quinn,* and with him *Charles H. English* of *English, Quinn, Leemhuis & Tayntor,* for appellee, cited: Lycoming County Insurance Co. v. Updegraff, 40 Pa. 311; Levington v. Ohio Farmers Ins. Co., 267 Pa. 448.

Opinion by Trexler, P. J., July 14, 1933:

The defendant, the Public Fire Insurance Company, issued a certain policy of fire insurance for the term of one year wherein it insured Ralph Litto, the appellant, against fire to an amount not exceeding $2,000 on household furniture contained in a two-story frame composition roof building occupied as a dwelling house, located in the City of Erie at 324 W. 17th Street. A fire occurred and the entire subject of the insurance was destroyed. The company refused to pay the same alleging that the insurance policy covered household

furniture contained in a *two-story* frame composition roof building occupied as a dwelling while the household furniture destroyed by the fire was contained in a *one-story* frame composition roof building occupied as a dwelling; both dwellings being situated at 324 W. 17th Street, Erie, Pennsylvania. The verdict was in favor of the plaintiff, but the court entered judgment, notwithstanding. It held that the policy described one of the two houses on the premises situated at 324 West 17th Street, and that the one described in the policy did not contain the goods destroyed by the fire. As the property insured was in the house in the rear, and was the one occupied by the insured, and the only one in which he was interested, we would be inclined to construe the policy, if possible, so as to give him the protection for which he paid. There is but one number attached to the lot and the description in the policy does not purport to give the number of the house, but states that it is occupied as a dwelling house situated at 324 West 17th Street. The point of divergence in the descriptions is that the house in the front of the property is two stories whilst the house in the rear is a one or a one and a half story building, both having composition roofs. The official directory of the City of Erie shows that both houses are assigned to the same number. There was no difference in the risk as between the two buildings. The verdict of the jury settled that question. The designation of a "one story building" is not exactly accurate as regards the building in the rear for it was what is commonly known as a cottage shaped building, and in the construction of that class of buildings, the building has two stories apparently, although but one is usually occupied.

An insurance policy does not require a technical description as is ordinarily employed in the conveyance of real estate. Thus it was held that, "Where through an error of a broker, a building, the contents

of which were insured, is described as located at a certain corner, when it is on another corner, and there is no other building on any of the four corners, the insurance is not avoided, the theory being that the rule of rejection of the erroneous part of the description in case of inaccuracies applies if there is enough to leave to identify the property." It is suggested that that same rule applies here as the words "two stories" do not invariably have the same meaning. Any building having two floors in it may be called a two-story building, and the designation of the upper story as "a half story" is a description of that kind of a story which, notwithstanding, is still a story.

We then have these facts that the household furniture was in a house occupied by the insured, that it was *at* 324 West 17th Street, and that in one sense of the word the furniture was in a two-story building and that this answered the description in the policy.

If, however, we have gone too far in construing the language of the policy in our endeavor to sustain what must have been the intention of the parties, namely, to insure plaintiff's property, we think there is another phase of the case which sustains the plaintiff's right to recover. The facts show that the insured went to an insurance broker who was what might be called a free-lance, soliciting insurance and turning it over to a regular agent. The assistant cashier of the broker placed the order with the regular agent of the defendant company, giving the subject of the insurance as household furniture and the location as 324 W. 17th Street *in the rear*. This order was repeated back, and thereafter the policy was delivered, but the words "in the rear" were not written in it. If the words had been included there would have been no question as to the identity of the building.

We have a number of cases in our own state where it has been held that insurance companies are respon-

sible for the acts of their agents. No company has a right to select and send out agents to solicit patronage and business for its benefit, and then saddle their blunders upon its customers. Columbia Insurance Co. v. Cooper, 50 Pa. 331. See also Burson v. Fire Assoc. of Phila., 136 Pa. 267, 20 A. 401; Welsh v. London Assurance Corp. 151 Pa. 607 and cases cited on page 617, 25 A. 142.

It has been held in numerous cases in other jurisdictions that an insurance company is estopped to set up the fact that the location of the property covered by an insurance policy was not properly stated where it appears that the error was due entirely to the mistake of the agent. Where the agreement in a policy is to insure certain property of a party such as the house in which he and his family reside, a barn on his farm or a warehouse for the storage of produce, or as the case may be personal property, the court will look to the real contract of the parties which was to insure the property of the policy holder. This statement is supported by many citations in the note to Aetna Ins. Co. v. Brannon, 99 Texas 391 (2 L.R.A. N.S. 548), in 13 Ann. Cases 1020. "In most of the states, courts of law will apply the doctrine of waiver and estoppel and allow proof of mistake so as to enable the plaintiff to maintain his action for indemnity and not drive him to a court of equity." State v. Schreck, 43 N. W. 340, 6 L. R. A. 524. The contract is not void from uncertainty nor is there any need of applying for a reformation of the contract provided it appears either from the face of the instrument or extrinsic facts which is the true and which is the false description. Am. Central Ins. Co. v. McLanathan, 11 Kan. 533. See also May v. Insurance Co., 872, Sec. 566 Couch Cyc. of Insurance, Vol. 3, Sec. 747 A. 23 et seq. And this is especially the case in jurisdictions where equity is administered by courts of law, and has been recog-

nized in a number of cases in this state many of which are cited in Cooley's Brief on Insurance 2nd Ed. Vol. 2, 1470 B, among them being Dowling v. Merchants Ice Co., 168 Pa. 234, 31 A. 1087; Meyers v. Lebanon Mut. Co., 156 Pa. 420, 27 A. 39; Eilenberger v. Protective Mutual Fire Ins. Co., 89 Pa. 464.

In the present case, the mistake of the agent, who was acting for the company and who countersigned the policy, was, in law, that of the company, and it does not lie in its mouth to claim that it has escaped liability by reason of the error of its agent. No person or company should profit by his or its own mistake, and if the location of personal property is misdescribed by insurer's agent when, as in this case, the proper information has been given to him, the insured, without asking for reformation of the policy, may, in an action, recover for his loss, if he can convince the jury that such is the case. Aetna Ins. Co. v. Brannon, supra.

The judgment is reversed and the record is remitted with direction to enter judgment on the verdict.