612 A.2d 1004

**Angela J. GOCEK, Appellee,**

**v.**

**Francis J. GOCEK, Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 1992.

Filed July 13, 1992.

Daniel P. Lyons, Stroudsburg, for appellant.

Thomas S. Ferguson, Phillipsburg, N.J., for appellee.

Before CAVANAUGH, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge.

We are asked to review the July 18, 1991, order of the Court of Common Pleas of Monroe County directing the defendant/appellant, Francis J. Gocek, to pay one-half of his monthly civil service pension to the plaintiff/appellee, Angela J. Gocek. We reverse.

The facts of record reveal that the plaintiff (born June 8, 1922) and the defendant (born March 2, 1923) were married on November 20, 1951. Five children were born of the marriage, of which only one is presently alive and he is emancipated.

On May 22, 1987, the plaintiff filed a complaint in divorce seeking, among other things, equitable distribution of the property and a share in the defendant's pensions.

A special master was appointed to hear the case, and, thereafter, the parties appeared before the master and advised him that "an agreement between the parties to resolve all outstanding issues raised by the pleadings" had been reached. This understanding was reduced to writing in a "comprehensive settlement agreement" [1].

With the completion of the June 29, 1988, hearing, the master prepared a report which recited the terms of the settlement agreement—in particular, that the plaintiff "shall receive the full spousal annuity provided by [defendant's] government pension", and that all parties had made full disclosure of their respective financial assets.

---

[1] There were some interlineations handwritten on the agreement that were necessitated by and the product of last-minute "negotiations between the parties". These changes were initialed by the parties and sworn to before the master as being consistent with their intentions. Also, the agreement was to be incorporated but not merged into the final divorce decree.

By decree dated August 1, 1988, the parties were divorced from the bonds of matrimony and the settlement agreement was incorporated but not merged into the court's decree.

On July 9, 1990, the plaintiff filed a petition to enforce the property settlement agreement. A rule was issued by the court directing the defendant to show cause why the relief requested should not be granted. An answer and brief were filed by the defendant. Thereafter, the court entered an order reforming the property settlement agreement on the ground of "mutual mistake" and directed that the defendant pay to the plaintiff one-half of his monthly government pension. This appeal followed.

■ The defendant asserts that the lower court was presented with insufficient evidence in support of its finding that a "mutual mistake" existed requiring the payment of his pension to the plaintiff, the accomplishment of which necessitated a partial reformation of the property settlement agreement.[2]

■ Before embarking on an analysis of the issue posed, we deem it prudent to set forth some well-established precepts regarding property settlement agreements and their modification:

*First,* a property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applicable to ascertaining the validity of contracts generally. *Kleintop v. Kleintop,* 291 Pa.Super. 491, 436 A.2d 223, 225 (1981). *Second,* "the misconception which avoids a contract is necessarily

**2.** The lower court's finding of mutual mistake was premised upon record evidence, i.e., no credibility determination or weight to be attached to a witness' testimony was required inasmuch as no witnesses testified before the court below. Consequently, since the finding of "mutual mistake" was simply a deduction from other facts and the ultimate fact in question (which was an admixture of law and fact) is purely a result of reasoning, this Court may draw its own inferences and arrive at its own conclusions from the facts as established. See *Bell v. Bell,* 326 Pa.Super. 237, 473 A.2d 1069, 1070 (1984), citing *In re Estate of McKinley,* 461 Pa. 731, 734 n. 1, 337 A.2d 851, 853 n. 1 (1975).

a mutual one, and a fact which entered into the contemplation of both parties as a condition of their assent". *Ehrenzeller v. Chubb*, 171 Pa.Super. 460, 90 A.2d 286, 287 (1952). And, in *Vrabel v. Scholler*, 369 Pa. 235, 85 A.2d 858, 860 (1952), the general rule was again stated thusly: " 'A contract [made under] a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake, if the parties [can be] placed in their former position with reference to the subject-matter.' " (Citation omitted). *Lastly*, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing. *Bugen v. New York Life Insurance Co.*, 408 Pa. 472, 184 A.2d 499, 500 (1962).

The above authorities make it clear that if mutual mistake is properly pleaded [3], the entry of the relief requested by a petitioner is justified. See *Ehrenzeller*, supra. We find, however, that such has not occurred here. Rather, the inconsistencies [4] which do appear are indicative of an admission that the plaintiff is relying on a unilateral mistake of fact—her own. See *Thrasher v. Rothrock*, 377 Pa. 562, 105 A.2d 600, 604 (1954); *Loyal Christian Benefit Association v. Bender*, 342 Pa.Super. 614, 493 A.2d 760, 762 (1985); *Murray on Contracts*, § 91E (3rd ed. 1990) (Unilateral versus mutual mistake—remedies).

█ On July 9, 1990, the plaintiff filed a petition seeking enforcement of the property settlement agreement, the sum and substance of which are unknown to us since it was not included in the record forwarded to this Court. The next document of record is the defendant's brief in support of his Petition Seeking Enforcement Of The Property Settlement

3. We would point out that the cases reviewed indicate that an *allegation* of mutual mistake in a pleading, when left uncontradicted, is sufficient to sustain the claim. See, e.g., *Vrabel v. Scholler*, 369 Pa. 235, 85 A.2d 858 (1952); *Sanders v. Lawn Mutual Insurance Co.*, 194 Pa.Super. 491, 168 A.2d 758 (1961).

4. Only on remand will this discrepancy in the accounts of the litigants be resolved by the trier-of-fact.

Agreement And In Opposition To The Plaintiff's Petition To Void Or Reform The Property Settlement Agreement filed June 21, 1991.[5]

Initially, we examine the plaintiff's Second Petition For Enforcement Of Property Settlement Agreement, wherein it is provided in relevant part:

> 2. On June 14, 1988 the parties, Francis J. Gocek and Angela J. Gocek executed a Property Settlement Agreement to settle their financial and property rights.

5. Between the filing of the court's August 1, 1988, decree divorcing the parties and the defendant's petition seeking enforcement of the property settlement, we had: 1) plaintiff's July 9, 1990, petition to enforce the property settlement agreement; 2) defendant's July 17, 1990, petition to enforce settlement agreement; 3) three answers filed on July 16 and August 2, 1990, and March 4, 1991; 4) plaintiff's second petition to enforce settlement agreement filed April 16, 1991; 5) praecipe for argument dated May 2, 1991; and 6) briefs of the defendant and plaintiff in support of their positions filed June 21 and July 1, 1991, respectively.

Not one of the documents recited above was made a part of the official record, albeit each is recited as having been filed and appears on the Monroe County—Domestic Relations Docket.

Under our Rules of Appellate Procedure, those documents which are not part of the "official" record forwarded to this Court are considered to be non-existent, with the result that those claims raised therein are considered waived. See *Commonwealth v. Rini,* 285 Pa.Super. 475, 427 A.2d 1385 (1981). And, these deficiencies may not be remedied by inclusion in a brief in the form of a reproduced record. *Id.*

Inasmuch as we find it necessary to remand this case because of the absence of sufficient evidence to support the lower court's ruling of mutual mistake warranting reformation of the property settlement agreement, we have taken the liberty to review the substance of the reproduced record in the briefs submitted on appeal by the parties to aid us in our effort to reach a determination which is consistent with the law and facts in this case. This, we believe, may avoid any protracted resolution of the case on remand.

However, given the need to remand because of the deficiencies in the record, we do not condone the *pro forma* review of reproduced records not appearing, initially, in the "official" record. See *Rini,* supra. We do so now because the result we reach would not be altered even if we were not to examine the reproduced record given the absence of clear, precise and convincing evidence of mutual mistake. *Bugen v. New York Life Insurance Co.,* 408 Pa. 472, 184 A.2d 499 (1962).

4. Paragraph nine[6] of the Property Settlement Agreement entitles Angela J. Gocek "to the full spousal annuity provided by Husband's pension."

5. The meaning of this clause in conformance with the negotiations between the parties and their counsel is that Angela J. Gocek is to be paid upon receipt by Francis J. Gocek of his Federal Government pension, 50% of that same amount, also paid simultaneously by the Federal Government.

6. It was the understanding of the parties based upon information obtained by Mr. Gocek from the United States Government which he related to Mrs. Gocek that the Federal Government would pay Mrs. Gocek 50% of Mr. Gocek's pension, approximately $700.00, as well as pay Mr. Gocek his entire pension amount.

7. It is assumed for the purpose of this petition that representations made by Mr. Gocek were done in good faith, without fradulent [sic] intent, and not made for the purpose of inducing Mrs. Gocek to sign this agreement under false pretenses.

8. This annuity for Mrs. Gocek was specifically not limited to any survival rights or payments upon the death of Mr. Gocek, but rather, it was intended to commence payment not at death, but upon receipt by Mr. Gocek of his Civil Service Retirement Benefits. This is clear from the exclusion of the word survivor from paragraph nine of the Property Settlement Agreement.

9. It appears from the express terms of this agreement that both parties understood and intended for Mrs. Gocek to receive 50% of Mr. Gocek's Civil Service Retirement Benefits. Due to the fact that the Federal Government will not provide Mrs. Gocek with her 50% payment, simul-

6. Paragraph 9 reads:
   *Pensions:* Wife shall be entitled to the full spousal annuity provided by Husband's government pension. Except for this annuity, Husband and Wife waive any interest which they may have in any pension, profit sharing, deferred compensation, or individual retirement accounts owned by the other.

taneous with a 100% payment to Mr. Gocek, does not void the payment right of Mrs. Gocek.

10. It should also be known that Mr. Gocek in addition to the Civil Service pension in the amount of $1,100.00, receives a State Pension in the amount of $187.30 and Social Security in the amount of $407.30 for a total of $1,694.60. Mrs. Gocek through the majority of her life was a housewife taking care of the couple's children, and as such will be without any retirement benefits. She is presently working for The Summit Resort, Tannersville, Pennsylvania, and with her age, physical condition and health problems, does not expect to be able to continue such employment for any significant time in the future.

11. This agreement imparticular [sic] paragraph nine was negotiated with the understanding that Mrs. Gocek would receive $700.00 a month from Mr. Gocek's Civil Service Retirement funds to sustain her. Pursuant to this agreement she is entitled to receive 50% of Mr. Gocek's Civil Service Retirement funds so as to equitably, reasonably and fairly enforce the terms and meaning of the Property Settlement Agreement.

See Appellee's Brief at 31a–33a. In response, the defendant alleged, in relevant part:

5. Denied. It is specifically denied that the meaning of this clause is based upon negotiations between the Parties prior to the execution of the Property Settlement Agreement. To the contrary, negotiations continued up to and including the time that the Property Settlement Agreement was signed. The Property Settlement Agreement was prepared by counsel for Plaintiff, and was changed ... at the time of the Master's Hearing. Any negotiations which took place prior to the signing of the Agreement are irrelevant. This allegation is therefore denied.

6. Denied. Defendant hereby incorporates by reference his answer to paragraph number five as if the same were set forth herein at length.

8.   Denied.   Defendant hereby incorporates by reference his answers to paragraphs number five and seven as if the same had been set forth herein at length.   By way of further answer, Plaintiff is receiving the full spousal annuity provided under paragraph nine.   By way of further answer, paragraph nine specifically provides that except for this annuity, Wife has waived any interest she may have in any *pension*, profit sharing, deferred compensation or individual retirement account owned by Husband.   The allegation is therefore denied and proof thereof demanded.

9.   Denied.   Defendant hereby incorporates by reference his answers to paragraphs number five, seven, and eight as if the same had been set forth herein at length.

10.   It is submitted that the amounts contained in paragraph ten accurately reflect what Mr. Gocek is currently receiving.   It is further admitted that Mrs. Gocek, while the couple's children were minors, has played a role as a homemaker.   It is specifically denied that this has any relevance whatsoever, in light of the expressed terms and condition of the Agreement entered into between the Parties.   Defendant specifically denies that the balance of the allegation, in particular whether Plaintiff is capable of employment or not and strict proof thereof is demanded.   Further, Plaintiff hereby incorporates by reference his answers to paragraphs number five, seven, and eight as if the same had been set forth herein at length.

11.   Denied.   It is specifically denied that any settlement negotiations between the Parties prior to the final version of the Agreement are material.   It is specifically denied that pursuant to the Agreement of the Parties that Mrs. Gocek is entitled to receive 50% of Mr. Gocek's civil service retirement funds so as to equitably, reasonably and fairly enforce the terms and meanings of the Property Settlement Agreement.   To the contrary, the Agreement speaks for itself.   Defendant hereby incorporates by reference his answers to paragraphs number five,

seven, and eight as if the same had been set forth herein at length.

Id. at 36a–39a (Emphasis in original).

From our review of the facts against the applicable law, we find that there was no "mutual" mistake in this case. It is quite clear that the plaintiff's allegation as to the meaning of Paragraph 9 (Pensions), that she "be paid upon receipt of [defendant's] ... Federal Government pension, 50% of that same amount," was denied specifically in the defendant's pleadings. See Plaintiff's Second Petition For Enforcement Of Property Settlement, Paragraphs 5, 6, 8 & 9; Defendant's Answer To Petition For Enforcement Of Property Settlement Agreement, Paragraphs 5, 6, 8 & 9.

We read the averments in the above pleadings to amount to a negation of the presence of a mutual mistake, see *Thrasher,* supra; *Ehrenzeller,* supra; see also *Sanders,* supra. Stated otherwise, the facts upon which the lower court relied for its finding of "mutual mistake" fall short of the clear, precise, and indubitable evidence necessary to invalidate a solemn written obligation. See *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A.2d 332, 337 (1957) (Evidence of mutual mistake must be established by two witnesses or by one witness and corroborating circumstances); *Schoble v. Schoble,* 349 Pa. 408, 37 A.2d 604, 605 (1944); *Dudash v. Dudash,* 313 Pa.Super. 547, 460 A.2d 323, 326–27 (1983).

It is a fact of some significance that in her Petition For Enforcement Of Property Settlement Agreement the plaintiff did not charge the defendant with fraud. See Paragraph 7. And, since it must be presumed that the defendant intended to give that which he was entitled to receive from the federal government via an annuity, "it [wa]s incumbent on plaintiff to plead facts unequivocally to the effect that there was a mutual mistake" as to her entitlement to the defendant's annuity upon his receipt thereof, and not upon his death. *Ehrenzeller,* supra. However, with the defendant's contravention of the plaintiff's allega-

tions, the presence of a mutual mistake on this subject is negated. *Id.*

Moreover, the court's reformation of the property settlement agreement is undermined by the absence of clear, precise and convincing evidence of a mutual mistake. See *Bugen,* supra; *Weightman v. Weightman,* 342 Pa. 8, 20 A.2d 215, 217 (1941). Nor was the lower court able to place the litigants in their former positions once it concluded the presence of a mutual mistake of fact. *Ehrenzeller,* supra; *Vrabel,* supra; *Sanders,* supra.

Accordingly, we find the better approach to be to reverse the lower court's order and remand for a procedendo whereby the parties may present evidence in support of their positions concerning the "pension/annuity" aspect of the Property Settlement Agreement.[7] See, e.g., *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984).

7. We read the terms "pensions" and "annuity", as they appear in the Property Settlement Agreement, to be words of art which do not lend themselves to being labelled as "simple words of common usuage." Contrast *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A.2d 332, 335 (1958); Black's Law Dictionary at 82–83 (annuity) & 1021–22 (pension) (5th ed. 1979). These terms are more characteristic of a "latent" ambiguity, *id.,* when the facts are examined.

The juxtaposition of annuity and pension under the caption: *"Pensions"* does little to illuminate the meaning of either term. We, therefore, cannot construe them in their natural, plain and ordinary meaning since both are terms of art which need elaboration to understand their true scope. *Id.*

The litigants would have been better served had their counsel taken the time to explicate the exact meaning of each term. As correctly noted by the lower court:

The lawyers having failed in their duty, it now becomes the responsibility of this Court to provide appropriate relief.

Accordingly, on remand, the court should receive testimony relating to the negotiations preceding and contemporaneous with the drafting of the final, acceptable version of the Property Settlement Agreement as reflective of the intentions of the parties on the question of pension/annuity. See *In re Estate of Boyd,* 394 Pa. 225, 146 A.2d 816, 820 (1958); *Kohn v. Kohn,* 242 Pa.Super. 435, 364 A.2d 350, 353–54 (1976).

Because the Property Settlement Agreement preserves the Agreement as a whole, even though a portion thereof is challenged (see Paragraph 21), we see no reason to expand the inquiry on remand beyond the presentment of proof regarding the negotiations leading

Order reversed; case remanded with a procedendo; jurisdiction is not retained.

up to and contemporaneous with the "pension" distribution question. See *In re Estate of Boyd,* supra.

Further, neither party seeks to invoke the remedies set forth in Paragraph 23 of the Agreement, e.g., rescission. Therefore, on remand, the scope of inquiry should not exceed the perimeters set forth herein.