J-A12016-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| SHAWN I. McCORD, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEBORAH A. McCORD, | : | |
| | : | |
| Appellant | : | No. 1717 MDA 2014 |

Appeal from the Order entered September 18, 2014,
Court of Common Pleas, Berks County,
Civil Division at No. 11 6215

BEFORE:  BOWES, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:                        **FILED MAY 05, 2015**

Deborah A. McCord ("Wife") appeals from the order of court modifying a term of the property settlement agreement between Wife and Shawn I. McCord ("Husband").  For the following reasons, we affirm.

The parties married in 1990.  Husband filed for divorce in 2011.  On various occasions during the divorce proceedings, the parties attempted to negotiate a settlement of their economic claims.  They were ultimately successful and entered into a property settlement agreement at a settlement conference before a divorce master on May 22, 2014.  Of relevance here, paragraph three of the settlement agreement provided as follows:

> Husband is a railroad worker and as such, is entitled to a railroad pension. He will retain 100% of Tier I benefits at such time as he is entitled to receive the same.  Wife shall be entitled to receive 100% percent of Tier II benefits at such time as she is entitled to receive the same.  Again, the parties shall

> cooperate by executing any and all documents necessary so that each will receive the benefits to which they are entitled.

Agreement, 5/22/14, ¶ 3. This agreement was incorporated into the June 25, 2014 divorce decree. **See** Divorce Decree and Order, June 25, 2014.

On July 10, 2014, Husband filed a petition to open and/or vacate the divorce decree, alleging that the parties had operated under the mutual mistake that the Tier II benefits comprised the "divorced spouse benefit" provided for under the federal law governing railroad pensions; that he was recently informed that the divorced spouse benefit was part of his Tier I benefit; that the parties intended for Wife to receive only the divorced spouse benefit from Husband's railroad pension; and asking the trial court to reform the property settlement agreement to reflect the parties' intention. Wife filed an answer to Husband's petition and a counter-petition to open and/or vacate the divorce decree, asking the trial court to extend the period of time for which the parties agreed Wife would receive alimony. Following a hearing, the trial court granted Husband's petition and denied Wife's counter-petition. It reformed paragraph three of the parties' property settlement agreement to provide essentially that Husband will receive 100% of the Tier II benefits and Wife will receive only the divorced spouse benefit portion of the Tier I benefits, to which she is entitled by law . This timely appeal follows.

Wife presents the following three issues for our review:

1. Whether the trial court erred by revising the settlement agreement of May 22, 2014 [] and awarding one hundred percent [] of Husband's Tier I and Tier II railroad pension benefits to Husband?

2. Whether the trial court erred by not considering all other relevant factors set forth in 23 Pa.C.S.A. § 3502(a) when it revised the agreement?

3. Whether the trial court erred by denying Wife's counter-petition to provide that Wife shall receive alimony until she reaches age sixty-two []?

Wife's Brief at 5.

Our standard of review requires us to consider whether the trial court abused its discretion when ruling on Husband's petition to open and/or vacate the divorce decree. *See Bingaman v. Bingaman*, 980 A.2d 155, 157 (Pa. Super. 2009). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.* (citation omitted).

Wife first argues that it was error for the trial court to revise paragraph three of the parties' agreement. As has long been established, and as Wife recognizes, when a property settlement agreement is incorporated, but not merged, into a divorce decree, "it stands as a separate contract, is subject to the law governing contracts[,] and is to be reviewed as any other

- 3 -

contract." ***Crispo v. Crispo***, 909 A.2d 308, 312-13 (Pa. Super. 2006).

Thus,

> under the law of contracts, the court must ascertain the intent of the parties when interpreting a contractual agreement. The standard of enforceability of a contractual agreement is also clear: absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements. As such, a trial court may interpret a property settlement agreement as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake.

***Id.*** at 313 (internal citations omitted). More particularly, "the misconception which avoids a contract is necessarily a mutual one, and a fact which entered into the contemplation of both parties as a condition of their assent". ***Gocek v. Gocek***, 612 A.2d 1004, 1006 (Pa. Super. 1992). "[T]o obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing." ***Id.***

> The meaning of this requirement [for clear, precise and convincing evidence] is that plaintiff's witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Furthermore, the evidence must be established by two witnesses of [sic] by one witness and corroborating circumstances.

*Easton v. Washington Cnty. Ins. Co.*, 137 A.2d 332, 337 (Pa. 1957) (internal citation omitted).

In this case, the trial court found that a mutual mistake existed as to the nature and composition of Husband's Tier I and Tier II pension benefits at the time the parties agreed that Wife would receive 100% of Husband's Tier II benefits. Trial Court Opinion, 12/5/14, at 5. We find no error in that determination. Husband testified that throughout the parties' negotiations, the parties understood that the railroad pension had a divorced spouse benefit and that he consistently maintained that he would not give Wife any portion of his pension beyond this divorced spouse benefit, which Wife was entitled to by federal law. N.T., 9/9/14, at 11-12. Julie Marburger, Esquire, an attorney who represented Husband at the May 22, 2014 settlement conference, testified that during the settlement conference before the divorce master, the bulk of the negotiations related to how to divide Husband's pension and 401(k) account. *Id.* at 26. She stated that at that time, both parties were operating under the belief that the Tier II benefits were the divorced spouse benefits. *Id.* at 27, 31. She further testified that prior to that settlement conference, Wife's counsel gave her an asset chart designating the Tier II benefits as the divorced spouse portion to which Wife was entitled. *Id.* at 29. Attorney Marburger also testified that she first learned that the parties' belief was mistaken when she call the pension

administrator to find out what documents would need to be prepared to effectuate the agreement. *Id.* at 28-29.

Thus, not only did Husband establish the existence of the mutual mistake with the testimony of two witnesses, which alone is sufficient to meet the applicable standard, but he also produced documentary evidence in the form of a document from Wife that also established the mutual mistake. The facts to which Husband and Attorney Marburger testified were "distinctly remembered and the details thereof narrated exactly and in due order," *see* N.T., 9/9/14, at 10-31, and the trial court found them credible; accordingly, we find no error with the trial court's determination that Husband satisfactorily established the existence of a mutual mistake. *See Easton*, 137 A.2d at 337.

The only argument Wife presents to the contrary is the bald assertion that her testimony was credible and that Husband's evidence "[did] not rise to the level of clear, precise and convincing evidence … ." Wife's Brief at 18.[1]  First, as an appellate court, we may not disturb the trial court's credibility determinations. *Busse v. Busse*, 921 A.2d 1248, 1256 (Pa. Super. 2007).  Second, as discussed above, we found no error in the trial

---

[1] Wife also argues that the trial court erred by admitting the asset chart into evidence.  Wife's Brief at 17-18.  The propriety of this evidentiary ruling is not before us, as Wife did not raise such an issue in her statement of matters complained of on appeal. *See Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 463 (Pa. Super. 2007); Pa.R.A.P. 1925(b)(4)(vii).

court's determination that Husband's evidence was sufficiently clear and precise to meet the burden as articulated in **Easton**. Wife has provided no substantive argument to the contrary, and so her challenge cannot succeed.

Next, Wife argues that the trial court erred by not considering all of the factors contained in 23 Pa.C.S.A. § 3502(a)[2] when revising paragraph three of the parties' property settlement agreement. Wife's Brief at 19. Wife provides no authority for the notion that where a court revises a particular term of a property settlement agreement due to the existence of a mutual mistake, it must re-evaluate the revised property settlement agreement *vis a vis* the § 3502(a) factors. In this case, the trial court placed the parties in the position they anticipated and agreed to: that Wife would receive only the portion of Husband's railroad pension to which she was entitled as his former spouse. This is the purpose of reformation of a contract. **Turner v. Hostetler**, 3518 A.2d 833, 836 n.1 (Pa. Super. 1986) ("[R]eformation … calls for the court to use its equitable powers … to reform the contract[] to conform to the true intention of the parties, when, in fact, that memorandum does not accurately reflect the prior intent of the parties."). This is not a case of modification to an equitable distribution award. The parties created the terms of their property settlement; the division of property was not the result of the trial court's application of the

---

[2] This statute contains a list of eleven factors a trial court must consider when formulating an equitable distribution award. 23 Pa.C.S.A. §3502(a); **Gates v. Gates**, 933 A.2d 102, 105 (Pa. Super. 2007).

statutory factors. We cannot fathom why the trial court would need to consider the § 3502(a) factors at this juncture, and Wife does not explain the basis for her presumption to this effect.[3]

Finally, Wife argues that the trial court erred in denying her counter-petition to revise the settlement agreement to provide that Wife will receive alimony until she is sixty-two. Wife's Brief at 22. The trial court denied Wife's request because it found that she failed to establish a mutual mistake as to the duration of the alimony award. Trial Court Opinion, 12/5/14, at 32. Wife disagrees, arguing that her testimony was sufficient to establish that the parties intended for her to receive alimony until she became eligible to receive railroad retirement benefits and that they were mutually mistaken as to the age at which this would occur. *Id.* at 22-23. There is a glaring problem with this argument, in that the only evidence of this alleged mistake was Wife's testimony. The law requires the testimony of two witnesses, or

---

[3] Notably, the only case law Wife cites in support of her argument on this issue is to the effect that a trial court must consider the § 3502(a) factors when fashioning an equitable distribution award. Wife's Brief at 20 (citing *Gates*, 933 A.2d at 105).

We further note the trial court's statement that it did consider these factors when it granted Husband's request for relief. Trial Court Opinion, 12/5/14, at 7-10. Curiously, in doing so, it recognized that these factors are applicable only to equitable distribution awards. *Id.* at 7, 9-10. As stated above, we do not agree that the trial court was required to consider the § 3502(a) factors. However, where the result is correct, we may affirm the trial court's determination on any ground. *See Frank v. Frank*, 833 A.2d 194, 195 (Pa. Super. 2003). Accordingly, even though we disagree with this aspect of the trial court's process in reaching its determination, we nonetheless affirm its ultimate conclusion.

one witness coupled with corroborating circumstances, to establish a mutual mistake. **Easton**, 137 A.2d at 337. Wife has failed to meet this standard.[4] The trial court therefore did not err in its determination.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2015

---

[4] Wife does not argue that there were circumstances to corroborate her testimony, **see** Wife's Brief at 22-23, and we will not formulate any such argument on her behalf. **Bombar v. West American Ins. Co.**, 932 A.2d 78, 93 (Pa. Super. 2007) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.").