J-S35001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBORAH GALLAGHER N/K/A DEBORAH A. GATTONE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS GALLAGHER | : | |
| | : | No. 3087 EDA 2018 |
| Appellant | : | |

Appeal from the Order Entered September 26, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2015-25149

BEFORE: OLSON, J., STABILE, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY STRASSBURGER, J.: Filed: June 18, 2020

Because I find the trial court erred in enforcing the parties' property settlement agreement, I respectfully dissent.

As set forth in greater detail by the Majority, in 2016, Husband and Wife entered into a property settlement agreement. In pertinent part, the agreement provided that Wife would receive 50% of the value of Husband's Johnson and Johnson stock, equal to $75,866. "The total value of Husband's stock was based upon a Johnson and Johnson account statement from December 2015, which at the time the parties entered into the settlement agreement was **accessible to both parties**." Majority at 2 (emphasis added). Specifically, the parties relied "upon an account statement provided

_____

[*] Retired Senior Judge assigned to the Superior Court.

by Husband and titled, 'Summary of J&J Stock as of December 31, 2015.'" Trial Court Opinion, 1/3/2019, at 4. Husband and Wife testified that based on this document, they **both** "believed that the marital value of the Johnson and Johnson stock was $151,722[] and Wife's 50% share was $75,866.[]" **Id.** In 2018, the parties discovered that the actual total value of Husband's Johnson and Johnson stock at the time the parties entered the settlement agreement was $27,701.95, which when split 50/50 in accordance with the agreement, would entitle Wife to $13,850.98.

Based upon the foregoing, Wife filed a motion to enforce the property settlement agreement, arguing "that she materially relied upon the agreed valuation of Husband's stock in executing the property settlement agreement." **Id.** In response, Husband conceded that the valuation was wrong, but averred the parties were mutually mistaken.[1] After a hearing, the trial court granted Wife's motion and Husband appealed.

> [A] property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applicable to ascertaining the validity of contracts generally. *Second,* the misconception which avoids a contract is necessarily a mutual one, and a fact which entered into the contemplation of both parties as a condition of their assent. [I]n **Vrabel v. Scholler**, 85 A.2d 858, 860 (Pa. 1952), the general rule was again stated thusly: "'A contract [made under] a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake, if the parties [can be]

---

[1] "A mutual mistake is '1. A mistake in which each party misunderstands the other's intent.... 2. A mistake that is shared and relied on by both parties to a contract.'" **Regions Mort. Inc. v. Muthler**, 889 A.2d 39, 41 (Pa. 2005), *quoting* Black's Law Dictionary 1023 (8th ed. 2004).

placed in their former position with reference to the subject-matter.'" [] *Lastly,* to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing.

***Gocek v. Gocek***, 612 A.2d 1004, 1006 (Pa. Super. 1992) (some citations and quotation marks omitted).

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.[2]

Restatement (Second) of Contracts § 152 (1981).

In this case, there is no dispute that the first two elements have been met. It is clear that both parties were mistaken "as to a basic assumption on which the contract was made[,]" and that had a "material effect on the agreed exchange of performances[.]" *Id.* Nonetheless, the trial court found that, because Husband bore the risk of this mistake, he could not rely on the

---

[2] The Restatement (Second) of Contracts § 154 provides:

> A party bears the risk of a mistake when
>
> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

doctrine of mutual mistake as a means to void the settlement agreement. It was largely on this basis that the Majority affirmed the trial court's order. For the following reasons, I respectfully disagree.

Here, it is abundantly clear that **both** parties were in possession of the account statement provided by Husband and **both** parties agreed to the valuation based upon this statement. In fact, the inclusion of the specific amount of money to which Wife was entitled, $75,866, serves as evidence that **both** Husband **and** Wife interpreted incorrectly the account statement. There is no indication that Wife asked for any additional information to supplement what was provided to her by Husband, and based upon the fact that Wife subsequently signed the agreement, it appears she was satisfied with utilizing the account statement as the sole means to determining the value of the stock.

Furthermore, while the trial court inferred that Husband, based upon his longtime employment at Johnson and Johnson, was or should have been aware of "the precise total value of his Johnson and Johnson stock, including the number of shares owned by Husband and the proper way to read his account statement[,]" simply being an employee does not make Husband an expert on the value of Johnson and Johnson stock. Further, there is no indication, nor does the trial court cite to any evidence, that Husband held himself out as someone with special knowledge of the stock's valuation or as having a greater ability to interpret the account statement provided to both

parties. There is also no indication that Husband had special and exclusive access to inside company information about the stock that Wife did not. In fact, the mistake was not about the valuation; instead, both parties simply interpreted the account statement incorrectly. Thus, I find the doctrine of mutual mistake applies and the trial court erred in enforcing the settlement agreement.

Lastly, I am cognizant of Wife's averments that she materially relied upon the agreed valuation of Husband's stock when entering into the property settlement agreement, and thus argues that she would be prejudiced by such a determination. However, our law provides for contract reformation to rectify any purported prejudice suffered. *See Zurich Am. Ins. Co. v. O'Hanlon*, 968 A.2d 765, 770 (Pa. Super. 2009) ("Mutual mistake will afford a basis for reforming a contract.") (citation omitted).

For the aforementioned reasons, I respectfully dissent.