J-A20028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BERNARD J. RUSSELL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARGARET A. RUSSELL | |
| Appellee | No. 1778 WDA 2015 |

Appeal from the Order Dated October 5, 2015
In the Court of Common Pleas of Washington County
Civil Division at No: No. 2006-6151

BEFORE:  BOWES, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 15, 2016**

Appellant Bernard J. Russell ("Husband") appeals from the October 5, 2015 order of the Court of Common Pleas of Washington County ("trial court"), granting in part Margaret A. Russell's ("Wife") petition for special relief/enforcement and denying his petition to modify.  Upon review, we affirm.

The facts and procedural history underlying this appeal are undisputed.  Briefly, on October 24, 2006, Husband filed a complaint in divorce against Wife.  On December 11, 2007, the parties entered into a marriage settlement agreement ("MSA"), which Wife filed in the trial court on December 12, 2007.[1]  On December 13, 2007, both parties signed and

_____

[1] Paragraph 19 of the MSA, relating to mutual waivers and releases, provides in part: "Neither party may apply to any court for a modification of this
*(Footnote Continued Next Page)*

filed their respective waiver of notice of intention and affidavits of consent to effectuate a no-fault divorce under Section 3301(c) of the Divorce Code, 23 Pa.C.S.A. § 3301(c). On December 21, 2007, the trial court issued a final divorce decree, releasing the parties from the bonds of matrimony under Section 3301(c). The trial court also incorporated the MSA into the divorce decree "for enforcement purposes only." Divorce Decree, 12/21/07.

On May 12, 2015, Wife filed a petition for special relief/enforcement, alleging that Husband had failed to comply with the terms of MSA. In particular, she alleged that Husband failed to (1) make alimony payments to her, and (2) pay her $475,000.00 that represented her interest in Husband's business,[2] and half of his loyalty bonus or $125,000.00, totaling $610.000.00. Wife also sought confirmation that Husband maintained two life insurance policies, $1,000,000.00 and $750,000.00 respectively, listing her as the sole beneficiary. Finally, Wife requested attorney's fees pursuant to the MSA. On May 14, 2015, Husband filed an answer to the enforcement petition and a concomitant petition to modify the MSA. In his answer, Husband claimed ineffective assistance of counsel and challenged the valuation of his business at the time the parties executed the MSA. In his

*(Footnote Continued)* _____

Agreement, except under Paragraph 11 (Custody) or Paragraph 12 (Child Support) of this Agreement, whether pursuant to the Divorce Code or any other present or future statutory authority."

[2] $475,000.00 is the difference between Wife's $575,000.00 marital interest in the business, which was valued at $1,150,00.00, and $100,000.00 in payments received by Wife from Husband. N.T. Hearing, 6/1/15, at 47-48..

petition, Husband requested reformation of the MSA based on mutual mistake and frustration of purpose as they relate to the valuation of his business. The trial court conducted a hearing on June 1, 2015, after which it issued an order granting in part Wife's enforcement petition and denying Husband's modification petition on October 5, 2015. Following the trial court's denial of Husband's reconsideration motion, Husband timely appealed to this Court on November 4, 2015.[3]

On appeal,[4] Husband raises five issues for our review.

_____

[3] The trial court did not order Husband to file a Pa.R.A.P. 1925(b) statement of error complained of on appeal. The trial court, however, filed a Pa.R.A.P. 1925(a) opinion addressing issues Husband raised in his reconsideration motion.

[4] In Pennsylvania, we enforce settlement agreements between husband and wife in accordance with the same rules applicable to contract interpretation. **Osial v. Cook**, 803 A.2d 209, 213–214 (Pa. Super. 2002). Thus, our review is guided by the following standards:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

**Kraisinger v. Kraisinger**, 928 A.2d 333, 339 (Pa. Super. 2007) (citations omitted). Furthermore:

> this Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not

*(Footnote Continued Next Page)*

1. Does the [the trial c]ourt have authority to modify a marriage settlement agreement that is incorporated but not merged into a final divorce decree by applying standard contract principles related to (a) mutual mistake of fact and/or (b) impossibility of performance?

2. Was there a mutual mistake of fact by the parties regarding the value of the business to be gained upon sale of the business, and of the value of Wife's equitable interest in the business?

3. Is it impossible for Husband to perform the terms and conditions of the MSA as to division of his business interests, given the evidence regarding the actual sales value of the business, the downturn in his income and prospects, and his other MSA financial obligations?

4. Is the [trial c]ourt nonetheless foreclosed from modifying a marriage settlement agreement when the mistake particularly is overvaluation of a closely held business?

5. Is the [trial c]ourt, in consideration of all the facts and circumstances surrounding this MSA, bound by special equitable principles to ensure a fair and just determination and settlement of property rights in divorces, in addition to applying regular contract principles?

Husband's Brief at 4-5.[5]

After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's October 5, 2015 opinion and its Rule 1925(a) opinion, authored by the Honorable Michael J. Lucas, cogently disposes of Husband's issue on appeal. *See* Trial Court Opinion, 10/5/15, at 10-16; Trial Court's Rule 1925(a) Opinion, 12/28/15,

*(Footnote Continued)* _____

include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citation omitted), *appeal denied*, 995 A.2d 354 (Pa. 2010).

[5] We observe that Husband does not challenge the trial court's calculation of the amount due to Wife under the October 5, 2015 order.

at 6-8. We, therefore, affirm the trial court's October 5, 2015 order granting in part Wife's enforcement petition and denying Husband's modification petition. We direct that a copy of the trial court's October 5, 2015 opinion and December 28, 2015 Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

- - -

BERNARD J. RUSSELL,

PLAINTIFF,

v.

MARGARET A. RUSSELL,

DEFENDANT

Common Pleas No.CV-200606151
Superior Court No.1778 WDA 2015

## OPINION PURSUANT TO PA.R.A.P. 1925

And now, on this 28th day of December, 2015, the Court provides its

opinion pursuant to Pa.R.A.P. 1925(A).

## Procedural History

On October 24, 2006, Bernard Russell filed a Complaint for Divorce in

Washington County, Pennsylvania. He raised counts of divorce and equitable

distribution.

On December 12, 2007, Margaret Russell filed a Marriage Settlement

Agreement ("MSA"). The thirty-five (35) page agreement was signed by both

parties and constituted a complete settlement of all rights and obligations pursuant

to the marriage. On December 13, both parties filed their affidavits of consent

pursuant to 23 Pa.C.S.A. § 3301(c). Mrs. Russell filed a Praecipe to Transmit the

Record. On December 20, 2015, the Honorable Janet Moschetta Bell signed the

parties' Divorce Decree and incorporated the parties' MSA for enforcement purposes only.

On May 12, 2015, Mrs. Russell presented a Petition for Special Relief/Enforcement to the undersigned in Motions Court. Mrs. Russell alleged that Mr. Russel had failed to follow multiple provisions of the MSA: that he had ceased paying alimony; that he had made neither the lump sum payment nor all monthly payments in exchange for Mrs. Russell's share of Mr. Russell's business; and that he had failed to maintain a life insurance policy. In total, the MSA required Mr. Russell to make payments to Mrs. Russell totaling $575,000. He had paid a total of approximately $100,000 at the time Mrs. Russell presented her petition. Mr. Russell appeared through counsel who orally motioned for a modification of the MSA at that time. The Court scheduled a hearing for June 1, 2015 for both requests. Both parties appeared at that time represented by counsel and participated in a contested hearing.

The Court filed its Order and Opinion on October 5, 2015. The Court ordered Mr. Russell to fulfill his obligations under the MSA, and established a schedule that would enable him to do so in a manner that did not require an immediate $475,000 payment.

On October 27, 2015, Mr. Russell filed a Motion for Reconsideration. The Motion for reconsideration raised twelve (12) grounds for reconsideration. The

2

Court denied this motion. Mr. Russell filed his Notice of Appeal on November 4, 2015. The Court provides its opinion pursuant to Pa.R.A.P. 1925(A)(1). In doing so, this Court incorporates by reference its Order and Opinion of October 5, 2015 because it contains a full discussion of the Court's rationale. (See Exhibit A).

## Standard of Review

When interpreting a property settlement agreement, the trial court is the sole determiner of facts, and absent an abuse of discretion, the [appellate courts] will not usurp the trial court's fact-finding function. *Stamerro v. Stamerro*, 889 A.2d 1251 (Pa. Super. 2005), citing *Chen v. Chen*, 840 A.2d 355, 360 (Pa. Super. 2003).

On appeal from an order interpreting a marital settlement agreement, the appellate courts must decide whether the trial court committed an error of law or abused its discretion. *Tuthill v. Tuthill*, 763 A.2d 417, 419 (Pa. Super. 2000).

Martial settlement agreements are "private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration." *Stamerro,* citing *Brower v. Brower*, 413Pa. Super. 48, 604 A.2d 726, 731 (1992). "A settlement agreement between [spouses] is governed by the law of contracts unless the agreement provides otherwise." *Stamerro,* quoting *Chen v. Chen*, 840 A.2d at 360. Because contract interpretation is a question of law, the Appellate Courts' standard of review over questions of law is *de novo*, and to the extent necessary, the scope of review is plenary. *Stamerro,* citing *Wade v.*

3

*Huston*, 877 A.2d 464 (Pa. Super. 2005), *Kripp v. Kripp*, 578 Pa. 82, 91 n. 5, 849 A.2d 1159, 1164 n. 5 (2004), and *Chen, supra* at 360.

## Discussion

Paragraph 2 of Mr. Russell's Motion for Reconsideration set forth twelve (12) findings of fact and conclusions of law he alleged this Court made and which he considers "incorrect." [1]  First, he alleged that the Court's Order directing enforcement of the MSA modified the parties' agreement. Second, he contended the "payback schedule" is "impossible" and requires him to pay in some years an amount of funds that exceed his annual income. Third, he charged that this Court "erroneously inferred" he was able to pay $ 285,000 at the time of the sale of his business. Fourth, Mr. Russell alleged that this Court "ignored" that he had to pay over $50,000 in Federal Income Tax from the "disposable proceeds from the sale of his business." Fifth, Mr. Russell indicated that this Court committed legal error by concluding there was no evidence of a mutual mistake of fact when the parties executed their MSA. Sixth, Mr. Russell asserted that this Court erroneously found that the MSA capped Mrs. Russell's interest in her former husband's business. Seventh, Mr. Russell stated this Court committed an error of law by requiring Mr.

---

[1] As Mr. Russell's Motion of Reconsideration specifically set forth the "errors" he believed this Court committed, this Court did not direct him to file a concise statement of errors complained of on appeal.

4

Russell to prove that Mrs. Russell knew that Mr. Russell "was making a mistake" when the parties executed the MSA. Eighth, Mr. Russell asserted that this Court "ignored the glaring errors in the MSA" as committed by the parties and their counsel who negotiated the MSA. Ninth, Mr. Russell charged that this Court "disregarded/ignored" his recent income which shows it is impossible for him to "pay all the money that the MSA requires." Tenth, Mr. Russell asserted that this Court concluded, in error, that the parties did not intend to divide the estate in equal shares. Eleventh, Mr. Russell contended that this Court "ignored the fact that both parties' object in the MSA was to liquidate the business and reap big rewards, which purpose was so severely frustrated by market forces that neither party could perform/benefit as anticipated." Twelfth, Mr. Russell advanced that this Court's citation to *Miller v. Ginsburg*, 874 A.2d 93, 99 (Pa. Super. 2008) was an irrelevant legal citation to any matter at issue in this case.

In support of these twelve claims of error, Mr. Russell provided not one (1) citation to legal authority to include statutory provisions or case precedent that would aid this Court in making a determination in his favor. Importantly, Mr. Russell did not specify a single provision in the MSA that permitted the Court to modify his obligations due to a change in his economic circumstances.

5

As a starting point in determining these issues, this Court strictly applied the principle that the terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification. *Brower, supra* at 730; 23 Pa.C.S.A. § 3105(c). *Stamerro v. Stamerro*, 2005 PA Super 424, ¶ 9, 889 A.2d 1251, 1258 (Pa. Super. 2005).

Exhibit 1 offered at the parties' hearing was a thirty-two page Marriage Settlement Agreement executed by the parties and their legal counsel. As "Exhibit A" to the MSA the parties attached a "PROMISSORY NOTE" in which Mr. Russell agreed to pay Mrs. Russell $525,000.00 by monthly payments of $ 2,000.00 per month commencing November 1, 2007 through October 1, 2017 and by making a "balloon payment" of $ 285,000.00 to Mrs. Russell on November 1, 2017. Paragraph 20 of the parties' MSA provided that no modification or waiver of the parties' agreement is valid unless in "writing and signed by both parties." No written modification executed by the parties was offered into evidence. The parties' MSA contained no provisions that permitted this Court to modify Mr. Russell's obligations under paragraphs 4.D.2, 10 B and B.1 of the agreement. Paragraph 4.D.2 sub-paragraphs (a) through (e) recited Mr. Russell's duty to pay $ 525,000.00 to Mrs. Russell; that such debt would be secured by a promissory note; and reiterated the specific terms of the promissory note that were already described. Paragraph 4.D.2 sub-paragraph (f) specifically provided, "*Whether or*

6

*not any or all of these entities (Mr. Russell's businesses) are sold, the payment of the Two Hundred Eighty-Five Thousand Dollars ($285,000) lump sum payment shall be paid by Husband to Wife on or before November 1, 2017."*

The lack of an applicable modification clause in the MSA and the express provisions of Paragraphs 4.D.2, 10 B and B.1 and the Promissory Note foreclose consideration of eight (8) of Mr. Russell's claimed errors. This Court is unable to consider the parties' current economic circumstances when determining whether to enforce or modify their MSA. The second, third, fourth, sixth, eighth, ninth, tenth and eleventh allegations of error described above all were asserted to avoid Mr. Russell's clear and unambiguous duties to pay Mrs. Russell pursuant to Paragraphs 4.D.2., 10 B and B.1 and the Promissory Note.

At argument for reconsideration, Counsel for Mr. Russell persisted in making his claim that the Court should modify the parties' MSA as a matter of equity. However, the primary asset to be distributed in the parties' MSA was Mr. Russell's closely held business. Mr. Russell both at hearing and in his motion for reconsideration argued that the MSA should be modified because he overvalued his closely held business. In response, this Court informed Mr. Russell's Counsel of the Superior Court's decision in *Colonna v. Colonna,* 2002 PA Super 376, 791 A.2d 353 (Pa. Super. 2001).

7

Specifically, this Court cited the portion of the opinion that stated:

Not surprisingly, **we find no Pennsylvania statutory or case law declaring that overvaluing a closely-held business may render an antenuptial agreement unenforceable.** The valuation of a closely-held corporation is not an exact science; reasonable minds often disagree on the worth of such a business, and the agreement evidences just that...

*Colonna, supra.* at 355-56.

Mr. Russell also faulted this Court for not accepting his claim that the parties' MSA was the product of a mutual mistake of fact regarding the true value of Mr. Russell's business interests. This Court's discussion of Mr. Russell's claim of mutual mistake is set forth in detail at pages ten (10) through thirteen (13) of this Court's original Order and Opinion. For these reasons, Mr. Russell's assignment of errors fifth, seventh and twelfth as set forth above are without merit.

Finally, Mr. Russell alleged this Court's Order enforcing the MSA modified the MSA. This Court's Order of enforcement did not direct that Mr. Russell immediately make all payments due pursuant to Paragraphs 4.D.2.,10 B and B.1. Instead, an extended schedule of payment was set forth to provide Mr. Russell additional time to meet his obligations. A complete discussion of this Court's calculation of the amounts unpaid to Mrs. Russell is set forth on pages four (4) through eight (8) of this Court's Order and Opinion of October 5, 2015.

8

For these reasons, this Court has found that Mr. Russell was not entitled to relief when he requested reconsideration of this Court's October 5, 2015 Order and Opinion.

BY THE COURT

_____ J.
MICHAEL J. LUCAS

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY,
PENNSYLVANIA
CIVIL DIVISION
- - -

BERNARD RUSSELL,

    PLAINTIFF,

    v.                        Case No. 2006-6151

MARGARET RUSSELL,

    DEFENDANT.

**ORDER**

And now, on this 5th day of October, 2015, after a hearing, oral argument

and review of the parties' written briefs, it is ORDERED, ADJUDGED, and

DECREED that the Plaintiff's motion is DENIED and the Defendant's motion is

GRANTED in part.

On or before October 20, 2015, Mr. Russell shall make all outstanding

alimony payments of $ 1,000.00 per month from March of 2015 to date.

Thereafter Mr. Russell shall continue making all monthly alimony payments as set

forth in paragraph 10(B)(1) of the parties' marriage settlement agreement ("MSA")

and shall continue making such payments through December 31, 2018.

On November 1, 2015, and on the first day of each month thereafter, Mr.

Russell shall make monthly payments of $ 2,000.00 in conformity with paragraph

4(D)(2)(b) of the parties' MSA. On or before April 30, 2016 Mr. Russell shall pay

the sum of $18,000.00 towards the amounts due and owing and shall make five (5) additional $18,000.00 payments each on August 30, 2016, December 30, 2016, April 30, 2017 and August 30, 2017. $7,900.00 shall be added to the principal amount of this obligation and the term of re-payment for this obligation shall be extended to February 1, 2018 with Mr. Russell being obligated to pay $ 2,000.00 on November 1, 2017, December 1, 2017, January 1, 2017 and $1,900.00 on February 1, 2018.

On or before November 2, 2015, Mr. Russell shall provide Mrs. Russell with copies of all life insurance policies presently in force concerning Mr. Russell. Mrs. Russell shall be declared by Mr. Russell as the beneficiary on all such policies if the total death benefits payable are equal to or less than $ 1,750,000. On or before December 31, 2015, Mr. Russell shall apply for and obtain such additional life insurance naming Mrs. Russell the beneficiary as is necessary to make certain that upon Mr. Russell's death Mrs. Russell receives $ 1,750,000.

On or before, December 1, 2015 Mr. Russell shall pay Mrs. Russell's counsel fees in the amount of $ 1775.00 for fees she incurred to enforce the MSA. Such payment shall be remitted directly to Blackwell and Associates.

On or before November 1, 2017 Mr. Russell shall remit the sum of $285,000.00 to Mrs. Russell.

2

Failure to comply with the provisions of this Order shall subject Mr. Russell to contempt sanctions by this Court to include compensatory and coercive relief.

Mr. Russell shall have no obligation to pay any monies due to a "loyalty bonus" from "Siemans" as this Court has found the evidence presented insufficient to demonstrate that such bonus was paid.

BY THE COURT

_____ J.
MICHAEL J. LUCAS

## Opinion

Before the court is Defendant Margaret Russel's Petition for Special Relief/Enforcement and Plaintiff Bernard Russell's counter-petition to modify the parties' marriage settlement agreement.

## Procedural History

Bernard Russell filed a Complaint in Divorce on August 24, 2006. He raised counts of no-grounds divorce and equitable distribution. On December 12, 2007, counsel for Margaret Russell filed a marriage settlement agreement ("MSA") that settled the parties' claims. Mrs. Russell filed her affidavit of consent pursuant to 23 Pa.C.S.A. § 3301(c) on December 13, 2007. Mr. Russell filed his affidavit of

3

consent and the Praecipe to Transmit Record on the same day. The Honorable Janet Moschetta Bell signed a divorce decree on December 20, 2007. She adopted the parties' MSA in her Order.

On May 12, 2015, Mrs. Russell presented a Petition for Special Relief/Enforcement. She alleged that Mr. Russell had failed to comply with the terms of the MSA. Specifically, she alleged that he had failed to pay her a portion of the valuation of his business, failed to make monthly alimony and asset distribution payments, and failed to make her a beneficiary of his life insurance as required by the parties' MSA. Mr. Russell responded with his own petition to modify, claiming the MSA was unenforceable on multiple grounds: that he agreed to its contents upon mistake, misunderstanding, that it was against public policy, that its purpose was frustrated, and that he entered into it due to the ineffective assistance of counsel. A hearing was conducted on June 1, 2015. Both parties testified.

Without objection the parties stipulated to the admission of their divorce decree and MSA. (See Exhibit 1) Pursuant to paragraph 4 of the MSA, Mr. Russell retained his business interests "as his separate property…" However, paragraph 4 obligated Mr. Russell to pay Mrs. Russell $ 575,000.00 for her marital interest in these business interests. Such amount according to Paragraph 4 required Mr. Russell to:

4

a. Pay Mrs. Russell $50,000.00 upon execution of the Agreement (Par.4(D.2.a);

b. Commencing November 1, 2007 and ending October 1, 2017 pay $2,000.00 per month for one hundred and twenty consecutive months (Par.4.D.2.b);[1] and

c. Pay a lump sum payment of $285,000.00 "when Husband sells Audilogics, Inc..." and "whether or not any or all of these(Mr. Russell's) entities are sold, the payment of $285,000 shall be paid on or before November 1, 2017(Par.4.D.e and f.).

Paragraph 4 of the MSA required Mr. Russell to pay one –half of an anticipated "loyalty bonus" of $ 250,000.00 from Siemans. Mr. Russell was mandated to make such payment within thirty days of receipt of the bonus. (See Exhibit 1, par.4.D.3). Paragraph 10 of the MSA requires Mr. Russell to pay alimony of $ 2,000.00 per month from January 1, 2011 through December 31, 2013 and $ 1,000.00 per month from January 1, 2014 through December 31, 2018. (See Exhibit 1, par. 10B and B.1) Paragraph 14 provides that Mr. Russell "at no expense to Wife" shall "maintain" two separate life insurance policies payable upon death in the amounts of $750,000.00 and $1,000,000.00. The MSA mandates that Mrs. Russell is the "sole" and "irrevocable" beneficiary of those policies.

---

[1] If such monthly payments were received after the 10th day of any month, a 5% late fee is to be assessed and added to the principal until paid.

5

The credible evidence presented established that Mrs. Russell has received two (2) checks of $ 50,000 each from Mr. Russell. Such checks were paid to Mrs. Russell for the purpose of partial satisfaction of Mr. Russell's obligations under paragraph 4 of the parties MSA. Mr. Russell never made monthly payments of $ 2,000 per month as required by paragraph 4 (D)(2)(b) of the MSA. Mr. Russell sold his business Audiologics, Inc. on January 13, 2012 to Heather M. Gasparovic and he presently is paid on a commission basis by her for his work at his former business. In 2012, Mr. Russell received $ 368,816.25 in cash when he sold his business and also was relieved of the obligation to pay a personally guaranteed debt in the amount of $ 279,933.75. (See Exhibit A) Mr. Russell sold his business in 2012 and did not remit to Mrs. Russell the sum of $ 285,000. The confession of Judgment that Mr. Russell executed indicated this payment was due on or before November 1, 2017. (See Exhibit1 attached "exhibit a")

Mr. Russell has not been paying the monthly $2,000.00 amount due Mrs. Russell pursuant to paragraph 4.D.2.b. Mr. Russell offered no sufficient or credible excuse for this failure. He did pay the sum of $50,000.00 to Mrs. Russell after the sale of Audiologics, Inc. If such amount is credited towards the monthly obligation Mr. Russell has not made fifty-four (54) payments and never timely made a single monthly payment. At the time of June 1, 2015 hearing seventy-nine

monthly payments should have been made, which amounts to $158,000. Mr. Russell incurred a five percent (5%) late fee for every payment. Such fees totaled $7,900.00 as of June 1, 2015.

As for Mr. Russell's receipt of a "loyalty bonus" from Siemans, Mrs. Russell in her testimony conceded that she "did not know" if Mr. Russell had received such bonus. Mr. Russell credibly testified that he did not receive such bonus. His tax return for 2008 showed total income of $293,587 and in subsequent years amounts less than $150,000. However, the returns provided were incomplete and contained claimed adjustments to income that did not correspond to the MSA.

Mr. Russell has not maintained life insurance in two separate amounts of $1,000,000 and $750,000 as required by paragraph 14 of the parties' MSA. He indicated he has one policy in the amount of $ 250,000.

The parties disputed Mr. Russell's payment of alimony in 2014. Mrs. Russell credibly testified that she was overpaid in the months of January and February in aggregate amount of $2,000.00. She indicated she did not receive alimony in November and December of 2014. The evidence demonstrated that as of the hearing on June 1, 2015 Mr. Russell had paid $2,000.00 towards total alimony due of $ 3,000.00 for the months of March, April and May of 2015.

The parties disputed Mrs. Russell's entitlement to alimony. Mr. Russell claimed that Mrs. Russell is living with another man. Such claim was not proven

7

credibly or persuasively. Mrs. Russell credibly testified that she lives with her mother.[2]

Mrs. Russell incurred counsel fees of $ 775.00 prior to the hearing on June 1, 2015. Her counsel's attendance and participation in the hearing and his brief following the hearing were necessary to enforce the clear and unambiguous terms of the parties MSA. Mrs. Russell's fees of $ 775.00 prior to the hearing and $ 1,000 in representation at and following the hearing are fair, reasonable and necessary charges. Counsel has achieved a favorable determination. Such charges are commensurate with his experience, reputation in the Washington County legal community and the customary fees charged within the local legal community. The amounts of fees awarded are appropriate in light of the complexity of the legal issues presented in this matter.[3]

---

[2] Additionally, the MSA provided that such alimony payments "shall not be reduced" because of "Wife's....cohabitation." (See Exhibit A par. 10 D).

[3] Pennsylvania, like a majority of states, follows the rule that parties may contract to provide for the breaching party to pay the attorney fees of the prevailing party in a breach of contract case, but that the trial court may consider whether the fees claimed to have been incurred are reasonable, and to reduce the fees claimed if appropriate. McMullen v. Kutz, 603 Pa. 602, 613-15, 985 A.2d 769, 776-77 (2009). In determining whether attorney's fees are reasonable, a trial court must consider numerous factors, including the following:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; ... the degree of responsibility incurred; ... the professional skill and standing of the attorney in his profession; the result he was able to obtain; and, very importantly, the amount of money or the value of property in question.

8

## Standard of Review

Post-nuptial agreements are to be reviewed under the same principles as pre-nuptial agreements *Stoner v. Stoner*, 572 Pa. 665, 819 A.2d 529 (2003). Such agreements are contracts, and are to be evaluated under the same criteria as other contracts: absent fraud, misrepresentation, or duress, the parties are to be held to the terms of their agreements. *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162 (1990).

The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. *Lesko v. Frankford Hospital-Bucks County*, 609 Pa. 115, 15 A.3d 337 (2011), citing *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 905 A.2d 462 (2006).

When the language of a contract is clear and unambiguous, the intention of the parties is to be determined from the express language of the agreement and its express terms will be given effect. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 661 (1982).

Finally, [the Court] must assume that the parties knew that the law gives to the words used herein a specific meaning and that the words, therefore, must be

---

Wigwam Lake Club, Inc. v. Quintero, 426 C.D. 2011, 2012 WL 8677729 (Pa.Cmwlth. June 11, 2012), citing *In re* LaRocca's Estate, 431 Pa. 542, 548-549, 246 A.2d 337, 340.

9

interpreted in their legal sense. [The Court] must also assume that the parties wrote this agreement in conformity to these well-established rules of contract construction. *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991).

## Discussion

Defendant, Margaret Russell, asserts in her petition for special relief and enforcement that Plaintiff, Bernard Russell, violated the terms and conditions of the parties Marriage Settlement Agreement (MSA). Specifically, she contends that he has failed to make $ 575,000 in payments as required by paragraph 4D of the MSA. She further asserts that Mr. Russell has failed and refused to pay agreed upon alimony at the rate of $ 1,000.00 per month since March 1, 2015. Finally, she has requested confirmation that Mr. Russell has maintained life insurance policies in separate amounts of one million dollars and seven hundred and fifty thousand dollars respectively. Pursuant to the MSA, Mrs. Russell has requested that the Court award attorneys' fees she incurred in pursuing enforcement. Mr. Russell urges the Court to reform the parties' agreement on the basis of mutual mistake and frustration of purpose.

## Mistake

The misconception which avoids a contract is necessarily a mutual one, and a fact which entered into the contemplation of both parties as a condition of their assent". *Ehrenzeller v. Chubb,* 171 Pa.Super. 460, 90 A.2d 286, 287 (1952). And,

10

in *Vrabel v. Scholler*, 369 Pa. 235, 85 A.2d 858, 860 (1952), the general rule was again stated thusly: "A contract [made under] a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake, if the parties [can be] placed in their former position with reference to the subject-matter." (Citation omitted). Lastly, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing. *Bugen v. New York Life Insurance Co.*, 408 Pa. 472, 184 A.2d 499, 500 (1962) and *Gocek v. Gocek*, 417 Pa.Super. 406, 409-10, 612 A.2d 1004, 1006 (1992).

The Court finds no credible or persuasive evidence that the parties' were mutually mistaken. The evidence revealed no mutual mistake of the parties. Mr. Russell contends that he, with the benefit of counsel, entered into a comprehensive MSA but was mistaken as to the value of his business and its future economic success. Mr. Russell asserts such valuation was mistaken. Mr. Russell claims his prior counsel was ineffective and the value was not based upon a formal appraisal. No testimony established that Mrs. Russell entered into the MSA with a mistaken belief as to the value of Mr. Russell's hearing aid business or an unrealistic expectation of its future economic success.[4] The evidence demonstrated that Mr.

---

[4] Pennsylvania also recognizes that a party to a contract in limited circumstances may gain relief due to a unilateral mistake. If a party to a contract knows or has

11

Russell and Mrs. Russell agreed in 2007 that Mr. Russell's business had a value of $1,150,000. Mr. Russell advances that he based such valuation on his belief that his business would grow and expand. The evidence indicated that Mrs. Russell was willing to accept delayed payments of certain specific sums based upon an agreed upon value of $1,150,000 for Mr. Russell's business.

The parties' intention in the MSA could not be clearer. The value of Audiologics for the purposes of equitable distribution was capped. Mrs. Russell could claim no greater amount due her if Audiologics suddenly blossomed into a twenty (20) location franchise that Mr. Russell testified he charted as the course for his business.

Mr. Russell's claims would have some persuasive effect if the parties were presently litigating equitable distribution of their marital estate. However, the

---

reason to know of a unilateral mistake by the other party and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed. *Lapio v. Robbins*, 729 A.2d 1229 (Pa.Super.1999). *Lanci v. Metropolitan Insurance Co.*, 388 Pa.Super. 1, 564 A.2d 972 (1989). In such a situation, Id.; Restatement (Second) of Contracts § 153. The evidence in this case did not clearly establish that Mrs. Russell knew or had reason to know that Mr. Russell was unilaterally mistaken as to the value of his business when the parties executed the MSA in 2007. Mr. Russell's evidence and argument contended that events, being the 2008 financial crisis, which occurred after the MSA was executed demonstrated that the parties were mistaken as to the future economic prospects of his business. If a mistaken and contractually unstated belief concerning one's future economic prospects were proper grounds to rescind one's contractual obligations, commercial relationships and domestic agreements would have no more permanence than a child's sand castle near the shore of the Atlantic Ocean while Hurricane Joaquin approaches.

matter to be decided by this Court is not equitable distribution of a marital estate. The MSA Mr. Russell entered into eight (8) years ago included a mutual waiver and release of claims including the right to "apply to any court for modification of this Agreement...whether pursuant to the Divorce Code or any other present or future statute or authority." (See Exhibit 1, p.25-26)

Parties are free to enter into agreements that they may later regret. Absent fraud or duress, however, the agreement is enforceable. See *Adams v. Adams,* 414 Pa.Super. 634, 607 A.2d 1116 (1992) and *Middleton v. Middleton,* 2002 PA Super 371, ¶ 20, 812 A.2d 1241, 1248 (Pa. Super. 2002).

The credible and persuasive evidence presented in this case demonstrated no fraud, duress, mutual or unilateral mistake of the parties. The parties entered into a counseled arm's length transaction that was reduced to a comprehensive written agreement. Mr. Russell's gamble that such agreement would ultimately be beneficial to him due to the expected growth of his business proved unwise. Mrs. Russell was not contractually obligated to insure the declining economic fortunes of Mr. Russell or his business, Audiologics.

## Frustration of Purpose

Mr. Russell argues that the contract should be modified on the basis that its purpose has been frustrated.

13

The Commonwealth recognizes that the Doctrine of Frustration of Purpose exists as a defense to the performance of a contract. When people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is prima facie regarded as dissolved." *Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority*, 916 A.2d 1183 (Pa. Super. 2007), citing *Hart v. Arnold*, 884 A.2d 316, 335 (Pa.Super.2005).

First, the purpose that is frustrated must have been a principal purpose of that party in making the contract. It is not enough that he had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. *It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract.* Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made. This involves essentially the same sorts of determinations that are involved under the general rule on impracticability.

14

*Step Plan Services, Inc. v. Koresko*, 12 A.3d 401 (Pa. Super. 2010), quoting

Restatement (Second) of Contracts, § 265

However, one party's wholly subjective expectations are insufficient to avoid enforcing an otherwise clear agreement based on the frustration of purpose doctrine. *Step Plan Services, Inc. v. Koresko*, 12 A.3d at 413, citing *American Bank and Trust Co. of Pennsylvania v.* Lied, 487 Pa. 333, 339, 409 A.2d 377, 380 (1979). Settlement agreements are subject to enforcement notwithstanding one party's failure to anticipate related complications prior to performance. *Miller v. Ginsberg*, 874 A.2d 93, 99 (Pa. Super. 2005).

Mr. Russell's testimony established that events of the past 8 years have made his decision to agree to the MSA less prudent today than it was in 2007. He explained his subjective intent was that Mrs. Russel should receive half of the proceeds from the sale of his business. The plain language of the MSA does not support this claim. His payment of merely $50,000.00 to Mrs. Russell following the sale of the business is not consistent with an intent of "1/2 and 1/2." To the contrary, the evidence clearly demonstrates a pattern of dilatory behavior by Mr. Russell with regard to contractual obligations to Mrs. Russell. Mr. Russell's evidence did not establish circumstances *so severe as not fairly to be regarded as within the risks that he assumed under* the MSA. The MSA did not condition Mr. Russell's future obligations on the financial well-being of Audiologics. No escape

15

clause is set forth in the agreement. Mr. Russell owned and operated Audiologics. The evidence did not establish that Mrs. Russell had superior knowledge of Audiologics value in 2007 and its future business success. Every financial agreement, whether commercial or domestic, carries some risk for the parties. Mr. Russell's present appreciation of that risk is not grounds to justify his breach of the parties' MSA.

## Conclusion

For these reasons, the Court grants the Defendant's Motion for Special Relief and Enforcement. Furthermore, because the Defendant was required to litigate in order to enforce the MSA, the Court shall award appropriate counsel fees.[5]

BY THE COURT,

_____ J.
MICHAEL J. LUCAS

---

[5] See Paragraph 22 of the MSA.

16